## PARLEY L. WILLIAMS, RESPONDENT, *v.* NEPHI W. CLAYTON, APPELLANT.

MANDAMUS.—QUO WARRANTO.—TITLE TO OFFICE.—In* an action brought by W. against C. as auditor for a mandamus compelling C. to issue to W. a warrant for salary as public officer, where C. has already issued warrant for such salary to N., but N. at the time of instituting the action of mandamus was not in possession of the office; *held*, that while *quo warranto* is the proper proceeding in which to try title to office, and that it cannot be tried in *mandamus*, yet in a case like the above *quo warranto* could not be resorted to.

ID.—ID.—OFFICE DE FACTO.—In an action as above it was not a good objection to *mandamus* to compel the auditor to issue the warrant for plaintiff's salary as Superintendent of Schools that such salary had already been paid to N., now out of office, who claimed such salary as officer *de facto*, and that hence the title to the office being involved, *quo warranto* was the proper remedy.

ID.—ID.—ADEQUATE REMEDY.—In an action as above it was not a good objection to the *mandamus* that the plaintiff had a plain, speedy and adequate remedy against N., which will defeat the *mandamus*; the remedy must be against the defendant in *mandamus* and not third persons.

ID.—ID.—DE FACTO OFFICER.—PARTIES.—In an action as above, N., the alleged *de facto* officer, but out of office when *mandamus* was instituted, was not a necessary party, since payment to N. could be no defense.

ID.—DISBURSING OFFICER.—DE JURE OFFICER.—The officer *de jure* having presented his oath and bond to the Territorial Auditor, and the latter having refused to receive or file the same, although the law required him to file them, the Auditor could not object to the *mandamus* that the oath and bond were not filed.

TITLE TO OFFICE.—OFFICER DE FACTO.—N., during the year 1886, when it was claimed he was an officer *de facto*, was in hiding, had no place of business, could not be found after diligent search and could not be communicated with through the postoffice; *held* that he was not an officer *de facto*.

ANNULLMENT OF STATUTE BY CONGRESS.—IMPLIED APPROVAL.—The fact that a Territorial enactment has never for many years been disapproved by Congress, when the law itself was contrary to the

Organic Act, does not weigh in favor of its validity, nor does the fact that the Territorial enactment was afterwards annulled, establish its former validity.

APPEAL from a judgment of the District Court of the third judicial district and from an order denying a motion for a new trial. The facts sufficiently appear from the opinion of the court.

*Mr. Jabez G. Sutherland,* for the appellant.

*Mr. Waldemar Van Cott,* and Respondent in person, for the respondent.

BOREMAN, J.:

On the 13th day of March, 1886, the plaintiff, P. L. Williams was appinted and commissioned Superintendent of District Schools for Utah Territory by the Governor of the Territory. He claimed to be such superintendent until the 3d day of April, 1887, when the office was abolished by an act of congress, and by that act the office of commissioner of schools was created, to be filled by appointment of the supreme court of the territory. The plaintiff was by the supreme court appointed to the office of commissioner of schools on the 2d day of April, 1887. The legislature in March, 1888, made an appropriation of the sum of $1,500 for salary of "the territorial superintendent and commissioner of schools" for the years 1886 and 1887. Plaintiff made demand upon the defendant for a warrant upon the treasurer for the $1,500 thus appropriated. The defendant drew his warrant for $750, for the year 1887, but refused to draw a warrant in favor of the plaintiff for the year 1886, alleging that he had given a warrant for $750 to L. John Nuttall, and that Nuttall was acting superintendent for that year, under an election said to have taken place in 1884. The plaintiff then applied to the district court for a *mandamus* to compel the defendant to issue his warrant upon the treasurer for said $750 claimed by plaintiff. Judgment was given for the plaintiff and thereupon the defendant appealed to this court.

The defendant contends that the title to the office is in-

volved in this action, and that consequently the plaintiff has mistaken his remedy, and should have first proceeded by action in the nature of *quo warranto* to try the title to the office. It is no doubt true that, as a general proposition, the proceeding by *quo warranto* is the proper one in which to try the title to an office, and that it can not be litigated in *mandamus.* But such trial of the title, when the rule requires resort to *quo warranto,* means the right to the possession of the office when such possession is held by another, and the purpose of the action is to oust the occupant. It is not to be resorted to when there is no occupant. The authorities cited by counsel bear out this idea. If the object of the present action were to try the title to the office of superintendent, and had been brought by one out of possession against one in possession, proceedings in the nature of *quo warranto* would be proper and necessary; but the title to the office, so far as it can be litigated in *quo warranto,* is a question that could not possibly arise in this controversy. Nuttall is not in possession of the office, and was not when the action was brought. He could not, therefore, be ousted, as he was already out of the office, and the object of *quo warranto* proceeding had been accomplished, the judgment in such proceeding being one of ouster. If there be no intruder in possession of the office when the action is brought, there could be no judgment of ouster. A proceeding, therefore, in the nature of a *quo warranto* would not have been necessary or proper. *Nichols* v. *McLean,* 101 N. Y. 536, 537, 5 N. E. Rep. 347; *State* v. *Jacobs,* 17 Ohio, 143; *Com.* v. *Athearn,* 3 Mass. 285; *Teal* v. *Sweeting,* 2 Johns. 183. Nuttall was not only out of the office, but had been out of it over a year, when this suit was brought, and in fact the office itself had been abolished.

It being clear that the title to the office of superintendent could not be tried by a proceeding in the nature of *quo warranto* after the office had been vacated by the alleged *de facto* officer, Nuttall, and after the office itself had been abolished, there could be no legal objection to passing upon such title in some other action in which it might arise. It arises incidentally in this case. It is not the

direct object of the action, but is first brought into the case by the answer of the defendant, which denies the right of plaintiff's claim to have been the officer. The proceeding is to compel the issuance of the warrant prayed for, and, to secure this, resort is had to *mandamus.* That is a proper proceeding, if there be no other plain, speedy and adequate remedy. It is claimed by the defendant that such adequate remedy existed through an action against Nuttall, to whom a warrant had been issued for said $750 now sought by the plaintiff. So far as the recovery of the money was concerned, there is no certainty that it could have been recovered from Nuttall. He may have been insolvent, but if solvent, it was very plain that he could not have been reached. He was in concealment, and could not be found, after diligent search by plaintiff. Yet if he were solvent, and could not be found, an action against him would not have been an adequate or a speedy remedy. Such a remedy, in contemplation of the statute, must be against the same party. It does not mean that a man must exhaust every source from which it might be supposed he could collect the money. It simply means that he must have exhausted every plain, speedy and adequate remedy to collect it through or from the same party. It does not require him, before resorting to *mandamus,* to sue everybody else that might be liable for the money. The proceeding against the defendant was to compel the issuing of the warrant to the plaintiff. An action against Nuttall would not accomplish this object. The warrant could only be issued by the auditor, and *mandamus* was the only means left to plaintiff to secure this action, and it was consequently proper. *People* v. *Smyth,* 28 Cal.. 21.

It is claimed that Nuttall should be a party to the proceeding before any judgment could be entered against the auditor. If Nuttall were in office as a *de facto* officer at the time the suit was instituted, he might have had an interest in the salary, and had the right to claim it adversely to the plaintiff. But such was not the fact. He was out of office, and could, as against the *de jure* officer, have no right to the money. There was, therefore, no necessity for making him a party.

The cases to which our attention has been called were where the *de facto* officer was in the possession of the office. As there was no authority for issuing the warrant to Nuttall, payment to Nuttall could be no defense. The appropriation claimed by the plaintiff was made when Nuttall, as stated, was not in the office, and no one was holding it. The office had been abolished. In the appropriation no reference was made to a *de facto* officer, and there was nothing in the act to show that the legislature intended to make the appropriation for the benefit of Nuttall, or of any one else than the legal claimant. The description fits no one except the *de jure* officer. The defendant had no authority to assume that the legislature intended that which it did not state. A disbursing officer has no right to assume that the money was payable to any one other than the legal officer, and his disregard of this rule is at his own risk. The defendant had knowledge of the plaintiff's appointment, and that he had been commissioned by the Governor, and it was his duty to have recognized him as such officer. The objection that the plaintiff had not filed his oath and bond is not one that the defendant can avail himself of, for it was he, and not the plaintiff, that was to blame for such failure. The oath and bond were presented to the defendant as auditor, and he refused to receive or file the same, although the law required him to file them. The plaintiff exhausted his power when he offered them for filing. He had done his duty, and the auditor cannot now plead his own failure of duty to defeat the plaintiff's claim.

But we do not think that Nuttall was a *de facto* officer during the year 1886. A man who holds a public office cannot discharge the duties of such office when he is in hiding. He cannot conceal himself from the public, and yet claim to be a public officer. Nuttall was so concealing himself, presumably to escape from some criminal charge. He had no place of business, his whereabouts were unknown, and he could not be found after diligent search, and could not be communicated with even by letter addressed to him through the postoffice. Whatever communication he had with his friends was in secret. The

defendant himself did not know where he could be found, and had seen him but once in the whole year. The defendant's communication with Nuttall was through a third party. The office *de jure* discharged all the duties of his office so far as was within his powers. He cannot be held responsible for school officers refusing to communicate with him, when he had done all he could to have such communication. His right to his pay does not depend upon the action of third parties. He did all that the law required of him, and in doing that he showed himself entitled to the pay, and no payment to another party, who is in hiding, and concealed from the public, can defeat the rightful claimant.

It is urged that Nuttall was elected to the office of superintendent in 1884, and that no other person had been elected since that time, and consequently that Nuttall held over. The question of the validity of Nuttall's election here arises. The same question, but in regard to other officers, has been before this Court on former occasions, and it has been held that all such offices should be filled by appointment of the Governor, and in no other way. *Duncan* v. *McAllister*, 1 Utah, 81; *People* v. *Clayton*, 4 Utah, 421, 11 Pac. Rep. 206. A like decision was rendered in Idaho. *Taylor* v. *Stevenson*, 9 Pac. Rep. 642. Long usage is not a valid basis upon which to rest the validity of the election law under which Nuttall was elected. The case of *Duncan* v. *McAllister*, supra, was decided in 1873, and in the face of that decision the law under which Nuttall was said to have been elected was passed in 1880. Nor does the fact that the enactment was never disapproved by the Congress weigh in the favor of its validity. An unconstitutional law does not have to be disapproved by Congress to render it invalid. The organic act and the laws of Congress stand as the constitution of the Territory. *Bank* v. *County of Yankton*, 101 U. S. 129. The legislative power of the Territory shall extend to all "rightful subjects of legislation," but such legislation must be "consistent with the Constitution of the United States, and the provisions of the organic act." Organic act, § 6, Comp. Laws 1888, p. 41. Section

7.of the organic act authorizes the legislature to provide for the election of "all township, district and county officers, not herein otherwise provided for." But the same section provides for the appointment of all other officers by the Governor "with the advice and consent of the legislative council." The plaintiff bore the commission of the Governor. That was *prima facie* evidence of the due appointment to the office to which the Governor was authorized to make appointment. It gave the plaintiff title to the office. It was, therefore, immaterial whether Nuttall had been elected to the office or not. We are unable to see that a repeal or suspension of a law by Congress could be a recognition of its former validity. It was evidently seen that, in spite of the decisions by the courts, the legislature persisted in their attempts to fill such offices in some other way, and, so far at least as the office of school superintendent was concerned, Congress was determined to put the matter beyond all question by repealing the act itself. There was no attempt to pass upon the constitutionality of the legislative act, and certainly nothing to recognize its former validity. The judgment of the District Court is affirmed.

HENDERSON, J., concurred.

JUDD, J., concurred in the judgment in this case.