# REPORTS OF CASES

DECIDED IN

# THE SUPREME COURT

OF THE

## STATE OF WASHINGTON.

[No. 3991.   Decided March 20, 1902.]

THE STATE OF WASHINGTON *on the Relation of F. M. Dudley, Appellant,* v. FLOYD L. DAGGETT, *as Comptroller of the City of Spokane, Respondent.*

APPEAL — MANDAMUS — AMOUNT IN CONTROVERSY.

The supreme court has jurisdiction on appeal of a proceeding by mandamus to compel the issuance of a warrant for salary to a city officer, although the amount in controversy may be less than $200.

MANDAMUS — ISSUANCE OF SALARY WARRANT.

Mandamus is the proper remedy to compel the certification of the payroll for the salary of a public officer and the issuance of a warrant therefor, when the salary is fixed by law, and the officer charged with the performance of such duty refuses to perform the same.

SAME — TITLE TO OFFICE — WHEN MANDAMUS PROPER REMEDY.

The rule that *quo warranto* is the proper remedy to try title to an office would not prevent resort to a proceeding by mandamus to compel payment of an officer's salary, in which his right to the office is incidentally involved, where there is no other claimant or occupant of the office whom it is necessary to oust.

1—28 WASH.

SAME — ADEQUATE REMEDY AT LAW.

Where a city comptroller refuses to issue a salary warrant to an officer of the city, on the ground that he has no title to the office, mandamus is the proper remedy when the salary of the officer and the duty of the comptroller to draw such warrants are both fixed by law, and the officer is not compelled to first resort to an action at law against the city for the recovery of money, especially when it appears that the city is not disputing his claim.

SAME — INTERFERENCE WITH OFFICER'S DISCRETION.

The duty of a city comptroller to draw warrants for officers whose salary is fixed by law being clearly defined by ordinance and charter, the performance of such duty would not require the exercise of judgment and discretion on the comptroller's part to determine the title of an officer to his office, and hence the performance of his duty in that respect is enforcible by mandamus.

MUNICIPAL CORPORATIONS — AUDIT OF CLAIMS — EXCEPTION OF SALARIES.

Where the salary of a city officer is fixed by charter or by ordinance passed pursuant to the charter it is not such a claim as is required to be passed upon by an auditing committee, whose duty it is made by charter to examine or reject or disallow all claims and demands of whatever nature against the city, "except salaries of city officers as fixed by this charter."

CITY OFFICERS — CORPORATION COUNSEL — EXPIRATION OF TERM OF OFFICE — HOLDING OVER.

Under the rule of law that an officer holds office until his successor is appointed and qualified, unless by the language of the statute such holding over is expressly or impliedly prohibited, the corporation counsel of the city of Spokane must be construed as continuing in office when no successor has been appointed and confirmed, where the city charter provides by § 16, that "all officers shall hold their offices until their successors are elected or appointed"; by § 79, that "the corporation counsel shall be appointed by the mayor and confirmed by the city council, and shall hold office for the term of one year, and until his successor is duly elected and qualified"; and by § 9 (as subsequently amended), that "the corporation counsel shall hold office for the term of two years, and all of § 79 in conflict with this section is hereby repealed."

Appeal from Superior Court, Spokane County.—Hon. GEORGE W. BELT, Judge.  Reversed.

*Cullen & Dudley,* for appellant.

*Hoyt & Taylor,* for respondent.

The opinion of the court was delivered by

WHITE, J.—This is a proceeding, brought upon the relation of the appellant, for a writ of mandamus to compel the respondent, as comptroller of the city of Spokane, to place the appellant's name upon the city pay roll for the month of May, 1901, as corporation counsel of said city for the entire month, and to make and deliver to appellant a pay check for the salary of such officer for the full month at the rate of $200 per month. The facts, as shown by the affidavit and alternative writ, are that, by ordinance passed May 23, 1899, the salary of the corporation counsel of the city of Spokane was fixed at $200 per month. Immediately after the passage of this ordinance, A. G. Avery was appointed corporation counsel for the period of two years. On or about the 15th of October, 1900, Mr. Avery resigned, and the appellant was thereupon appointed and confirmed as corporation counsel of the city, to fill out the unexpired term. The appellant duly qualified and entered upon the performance of the duties of the office, and thereafter continued to perform such duties until the commencement of this proceeding, including a period covering the entire month of May, 1901. No successor to the appellant has been appointed and confirmed, and no person has qualified to perform the duties of the office since the appointment, confirmation, and qualification of appellant. Respondent is, and has been since the 17th day of May, 1901, the comptroller of the city of Spokane. By ordinance it is made his duty, as city comptroller, to certify pay rolls for official salaries fixed by charter or ordinance, and to pay such salaries by pay

checks issued by him upon the proper fund of the city treasury. The charter further provides that the salary of corporation counsel shall be paid in warrants at the end of each calendar month. The appellant duly demanded of the respondent that he perform these duties, by certifying to a pay roll showing appellant to have been corporation counsel for the month of May, 1901, and making and delivering to appellant a pay check for the salary for that month. This the respondent has refused to do, but has prepared and certified a pay roll for the salaries of city officers fixed by charter or ordinance for the month of May, 1901, and has therein set down the name of appellant as corporation counsel for the city for the period of twenty-one days only of said month of May, and certified that the appellant as such corporation counsel is entitled to receive as salary the sum of $135.45 only,—being the salary for twenty-one days at the rate of $200 per month,—and has prepared a pay check in favor of the appellant for said sum of $135.45 only. The alternative writ having been served, the respondent appeared and demurred upon the grounds (1) that the court was without jurisdiction of the subject matter; and (2) that the affidavit and alternative writ of mandate did not state facts sufficient to constitute a cause of action, or to entitle the relator to any relief. This demurrer being sustained, and the relator electing to stand upon the affidavit and alternative writ, judgment of dismissal and in favor of the respondent for costs was entered. From the order sustaining the demurrer and the judgment, this appeal is taken.

The respondent interposes a motion to dismiss this appeal upon the ground that this court has no jurisdiction, inasmuch as the amount in controversy is the sum of

$64.55; being the difference between the salary for the full month of May and the salary for twenty-one days of that month.

"The supreme court shall have  .  .  . appellate jurisdiction in all actions and proceedings, excepting that its appellate jurisdiction shall not extend to civil actions at law for the recovery of money or personal property when the original amount in controversy, or the value of the property, does not exceed the sum of $200, unless the action involves the legality of a tax, impost, assessment, toll, municipal fine, or the validity of a statute.  .  .  . "
§ 4, art. 4, State Constitution.

It will be observed that a distinction is drawn, under this provision of the constitution, between "actions" and "civil actions at law for the recovery of money or personal property." It may be conceded that mandamus is generally regarded as an action. It is of common-law origin and the writ of mandamus is in the nature of a common-law remedy. A judgment in a mandamus proceeding, as in case of an ordinary action at law, is subject to review by writ of error or appeal under like conditions as in other cases. *State ex rel. Boom Co. v. Superior Court,* 2 Wash. 9 (25 Pac. 1007). But while it is an action at law, within the meaning of the term "action" as used in the constitution, it cannot be said to be "a civil action at law for the recovery of money or personal property." These terms refer to an ordinary action where the plaintiff seeks to recover a simple money judgment, or a judgment for the recovery of personal property or its value. The remedy sought in a mandamus proceeding is of an extraordinary nature. The complainant, under our statutes, in such an action, seeks to obtain a command from a court of law directed to an inferior tribunal, corporation, board, or person, to compel the performance of an act

which the law specially enjoins as a duty resulting from
an office, trust, or station, or to compel the admission of
a party to the use and enjoyment of a right or office to
which he is entitled and from which he is unlawfully pre-
cluded by such inferior tribunal, corporation, board, or
person.   § 5755, Bal. Code.

While the particular question here raised was not dis-
cussed, we have already entertained jurisdiction in two,
if not more, similar actions.  *Mudgett v. Liebes,* 14 Wash.
482 (45 Pac. 19) ; *State ex rel. Smith v. Neal,* 25 Wash.
264 (65 Pac. 188).   These were actions in the nature of
mandamus proceedings to compel an officer to issue city
and county warrants to the relators.   In the first case
$83.33 was involved.   In the second case less than $200
was involved.   We have also held that, where a claim is
allowed and a warrant is to issue for it, the one entitled
to the warrant must compel the ministerial officer who is
in fault to act, before he is entitled to any other remedy.
*Abernethy v. Town of Medical Lake,* 9 Wash. 112 (37
Pac. 306).   We therefore conclude that the motion to dis-
miss must be denied.

Several questions are presented by the demurrer:  First,
The technical objection that mandamus is not the proper
remedy.   Second (and the principal question involved),
That respondent's term of office ceased immediately upon
the expiration of the period of two years from the date of
Mr. Avery's appointment; that immediately upon the termi-
nation of the two years, and *ipso facto,* the appellant
ceased to be an officer of the city and ceased to be entitled
to any salary.   No question is made by respondent as to
the regularity of appellant's appointment and qualifica-
tion to and for the office of corporation counsel, or as to the
full performance by appellant of the duties of the office

during the entire month of May,—the period for which appellant seeks to obtain the pay check. It is conceded that no successor to the appellant has been appointed and confirmed. The appellant was, during the entire month of May, 1901, corporation counsel *de jure,* if any person was such corporation counsel after the 21st of May, 1901; and the principal question presented upon the merits of the case is whether, under the charter of the city of Spokane, the office of corporation counsel became vacant *eo instanti* on the expiration of the period of two years, so that an incumbent holding over until his successor was appointed and confirmed would not be entitled to any compensation for his services, or whether the incumbent holds over until the appointment and confirmation of a successor and is entitled to his salary until the happening of that event. Third, Did the appellant have an adequate remedy at law? Fourth, Was the comptroller lawfully exercising discretion and judgment in refusing to issue the warrant? Fifth, Was this a claim that the auditing committee created by the charter should first pass upon, before the comptroller was authorized to issue the warrant?

The affidavit shows that the city of Spokane has enjoined upon the comptroller of the city the certification of a pay roll for the salaries of city officers fixed by charter or ordinance, and the issuance of a pay check upon the proper fund of the city treasurer for the amount of the salary; and the charter provides that the salary of corporation counsel shall be paid in warrants at the end of each calendar month. The performance of these acts is specially enjoined upon the comptroller as a duty resulting from his office, and clearly falls within the provisions of § 5755, Bal. Code. Since the relator is beneficially in-

terested in the, performance of these duties, through which alone he can receive his salary, he is clearly, under the statute, entitled to the writ prayed for to compel such performance when it is refused by the comptroller. That mandamus is the proper remedy to compel the certification of the proper pay roll and the issuance of the proper salary warrants, when the salary is fixed by law and the officer charged with the performance of such duties refuses to perform the same, is sustained by overwhelming authority. Mr. Merrill, in his work upon Mandamus, says:

"This writ is the appropriate remedy to compel a municipal corporation, or an officer thereof, to audit the account of a public officer for his salary, or to draw a warrant therefor, or to pay such a warrant. It is considered that it would be a great hardship to compel a public officer to bring suit for his salary. When such salary is fixed by law, it is not necessary to audit it, since the auditing officers have no discretion to allow or reject it. Some courts, ignoring the delay, expense and uncertainty as to results, have refused the writ in such cases, because the object of the writ is to obtain money, and the same object might be attained by a suit against the municipality or on the bond of the delinquent officer. Such decisions controvert the proposition, that, when a claim has been allowed by the proper authority, the duty of an auditing officer to draw a warrant therefor is merely a ministerial duty, which will be enforced by a mandamus; and it controverts the proposition that, when accounts have been allowed by the proper officers or tribunals, the duty of payment by a public disbursing officer is merely ministerial, and that a mandamus will lie to compel the performance of such duty." Merrill, Mandamus, § 136.

See, also, Id., § 126; High, Extraordinary Legal Remedies (3d ed.), § 351.

"The remedy is frequently resorted to, to compel the drawing of warrants upon treasurers for and payment by

the latter of the salaries of public officers. For this purpose it is the peculiarly appropriate remedy." 2 Spelling, Extraordinary Relief, § 1492.

The charter of the city of Spokane, when adopted, provided that the compensation of corporation counsel should be $2,000 per annum. It further provided that this salary *should be paid in warrants* at the end of each calendar month, and it is further provided that the city council by ordinance may alter the salary. An ordinance was passed under this provision of the charter fixing the salary of corporation counsel at $2,400 per annum. It will be seen, then, that the salary was fixed by law, and in drawing a warrant therefor the comptroller was performing a merely ministerial duty. The respondent, however, contends that, since the right of relator to the relief sought depends upon his title to the office of corporation counsel, such question must necessarily be determined before his prayer can be granted, and that in a proceeding of this nature the court will not determine title to an office, and relies upon the decisions of this court in *Lynde v. Dibble,* 19 Wash. 328 (53 Pac. 370), and *Kimball v. Olmsted,* 20 Wash. 629 (56 Pac. 377). *Lynde v. Dibble* was a proceeding to compel the respondent to surrender to the relator the possession of the office of clerk of the municipal court of the city of Spokane. The respondent was in possession of the office, and was denying the relator's title. In *Kimball v. Olmsted* the relator had been removed from the office, and his successor appointed and inducted into office. The proceeding was to compel the mayor and council of the city to admit the relator to the office in question and recognize him as the legal incumbent thereof. In each of these cases there was a contest between two claimants to the office. In each the relator was out of the office, and the office was filled by an incumbent claim-

ing title thereto. Notwithstanding the provision in the latter part of §5755, *supra*, we held that the relators in the cases cited should proceed by *quo warranto*. In the case at bar the relator's title to the office comes only incidentally into question. There is no incumbent in office other than the relator himself. There is no claimant to the office, and, since it is impossible for relator to bring *quo warranto* against himself, the objection that *quo warranto* is the proper proceeding is without foundation. The present proceeding comes within the rule laid down in *Williams v. Clayton*, 6 Utah, 86 (21 Pac. 398, 399). It is, no doubt, true that, as a general proposition, the proceeding by *quo warranto* is the proper one in which to try the title to an office; but such trial of title, when the rule requires resort to *quo warranto*, means the right to the possession of the office when such possession is held by another and the purpose of the action is to oust the occupant. *Eddy v. Kincaid*, 28 Ore. 537 (41 Pac. 156); *Harwood v. Marshall*, 9 Md. 83; Merrill, Mandamus, §§ 146, 152.

It is next objected that the relator has an adequate remedy in an action at law against the city. This proceeding is not to compel the payment of money, although that may be the ultimate result, but to compel the respondent to perform a ministerial duty imposed upon him by law, and which is for the benefit of the relator; and, admitting that the relator might have abandoned his right to have his name inserted in the pay roll for the full month, and to have the proper pay check delivered to him, and have sued the city for the sum alleged to be due, this would have been no remedy as against the respondent, nor would it have afforded the same relief. The law requires the comptroller to certify to the proper pay roll, and to

make out and deliver on demand to the officer a warrant in payment for his salary at the end of each calendar month. To deny the relator the right to enforce compliance with this duty would be to permit the comptroller to avoid a duty specially enjoined by law. Under the statute it is enough that the law requires the comptroller to perform these acts, and that the relator is interested in having them performed.

"In order that the existence of another remedy shall constitute a bar to relief by mandamus, such other remedy must not only be an adequate remedy in the general sense of the term, but it must be specific and appropriate to the circumstances of the particular case. It must be such a remedy as is calculated to afford relief upon the very subject of the controversy. For if it is not adequate to afford the party aggrieved the particular right which the law accords him, mandamus will lie, notwithstanding the existence of such other remedy. In other words, it is not merely the absence of other legal remedies, but their inadequacy coupled with the danger of failure of justice, that would result without interference by an extraordinary remedy which usually determines the propriety of this species of relief." Spelling, Extraordinary Relief, § 1375.

See, also, *Harwood v. Marshall, supra.*

The petition shows no refusal upon the part of the city, or the officers of the city, other than the respondent, to recognize the relator's title to the office of corporation counsel. The city has not, so far as appears in the case, through the officers authorized to speak for it—either its mayor or common council—authorized or sanctioned the action of the comptroller. The respondent, having assumed to take a certain position upon a question of law complicated by no dispute over questions of fact, must bear the responsibility of his position. The relief which

would be afforded by an action against the city is relief
against another party, is different in kind, less speedy and
complete than that afforded by the present proceeding;
and the charter of the city expressly provides that the
salary shall be *payable in warrants* at the end of each
calendar month. The right to sue the city for the salary
is doubtful, without first proceeding to compel the issu-
ance of the warrant by the comptroller. As was said by
this court in *Abernethy v. Town of Medical Lake,* 9 Wash.
112, 114 (37 Pac. 306):

"The contracting powers of the town have done all
they can by the making of the contract and the allowance
of the claim; it is the ministerial officers who are now in
fault, and the plaintiff must move them to action before
he is entitled to any other remedy."

The objection that the relator should be compelled to
sue the municipality, which has not questioned his right
to the salary, is without force.

It is next objected that the performance of the duty
imposed upon the respondent in this case requires the
exercise of judgment and discretion, and cannot, there-
fore, be controlled by a proceeding of this nature. The
salary being fixed by law and payable in warrants drawn
on the city treasurer and the duty of the comptroller in
the premises being clearly defined by the ordinance and
charter, there is no room for the exercise of such judg-
ment or discretion as will preclude the court from com-
pelling the performance of the duty by the writ of man-
damus. The only question involved is the question pre-
sented by the charter,—as to whether the appellant con-
tinues in office as corporation counsel until his succes-
sor is appointed and confirmed. As was said by the
supreme court of Tennessee in *Morley v. Power,* 5 Lea,
691:

"But that character of discretion only exists when the law has given the power to decide, with the intent that the decision shall be final unless changed by appeal or review. It does not exist when the act to be done is ministerial upon a given state of facts, although the officer or tribunal or body must judge, according to their best discretion, whether the facts exist, and whether they should perform the act. For otherwise it is obvious no mandamus would ever lie in any case."

The case of *State ex rel. Manix v. Auditor of Darke County*, 43 Ohio St. 311 (1 N. E. 209), was an application for a writ of mandamus to compel the auditor to issue a warrant for the payment of land that had been purchased by the county for a children's home, where the deed had been accepted, and the county had entered into possession of the land, and the county commissioners had ordered the warrant drawn for the amount of the purchase price, but had afterwards rescinded the order and directed the auditor to withhold his warrant for the sum so allowed. The court, after holding that the order rescinding the warrant was without authority of law, said:

"It is not enough that the auditor may honestly entertain doubts concerning the propriety of the original order or the effect of the order of rescission. The right to a writ of mandamus to enforce the performance of an official act by a public officer depends upon his legal duty and not upon his doubts. *Ryan v. Hoffman*, 26 Ohio St. 109. If his duty is clear, its performance will not be excused by his doubts concerning it, however strong or honest they may be. It is not doubted that it is competent for an auditor to defend against an application for mandamus to compel him to issue his warrant on the treasurer upon an allowance and order of the commissioners, by showing that the order was wholly unauthorized, and that the commissioners had no authority to make it."

So, too, in this case, we have no doubt that the comptroller could set up any facts as a defense; for instance, the removal of the officer, or that he had resigned, or any other facts to show that he was not entitled to the warrant claimed. See, also, *Wood v. Strother,* 76 Cal. 545 (18 Pac. 766, 9 Am. St. Rep. 249). We think, therefore, that the performance of a duty of the nature required involves no discretion which places it beyond the control of the court to enforce the performance of the duty by mandamus.

The city charter created an auditing committee consisting of the mayor, president of the council, and the comptroller, and made it the duty of that committee to examine or reject or disallow all claims and demands, of whatever nature, against the city, "except salaries of city officers as fixed by this charter." It is generally held that, where a law or ordinance fixes a salary to be paid to a public officer, it is the same as an adjusted claim and need not be adjudicated or audited. Merrill, Mandamus, §§ 135, 105, and cases cited.

The claims and demands which are to be passed upon by the auditing committee are those which are constantly arising, and which vary from time to time, the amount and nature of which are not fixed by municipal law, and which are properly subject to scrutiny and allowance before payment. The amount of the salary of a city officer, fixed by ordinance, is as certain as one fixed in express terms in the charter. Where the charter has created the office, and either provided for a salary in express terms, or for the salary to be fixed by ordinance, the salary is the salary of a city officer fixed by the authority of the charter, and there is no reason or necessity for auditing the same; and the charter does not mean that such claims shall be audited by the auditing committee.

The principal question in this case is, was the appellant corporation counsel of the city of Spokane and entitled to a warrant for the salary of $200 for the calendar month ending May 31, 1901? No one to succeed him had been appointed and confirmed, and he performed the duties of the office during the entire month. Mechem states the general rule as follows, and he is sustained by the authorities:

"It is usually provided by law that officers elected or appointed for a fixed term shall hold not only for that term but until their successors are elected and qualified. Where this provision is found, the office does not become vacant upon the expiration of the term if there is then no successor elected and qualified to assume it, but the present incumbent will hold until his successor is elected and qualified, even though it be beyond the term fixed by law. Where, however, no such provision is made the question of the right of the incumbent to hold over is not so clear, but the prevailing opinion in this country seems to be that, unless such holding over be expressly or impliedly prohibited, the incumbent may continue to hold until some one else is elected and qualified to assume the office. Such a rule seems to be demanded by the most obvious requirements of public policy, for without it there must frequently be cases where, from a failure to elect or a refusal or neglect to qualify, the office would be vacant and the public service entirely suspended." Mechem, Public Officers, § 397.

The superior court of Maryland treats public officers as trustees of the public, and says:

"Therefore, every office, created either by the constitution or by the laws authorized by that instrument, is a public trust created for the public benefit. Where an office is of statutory creation the legislative department of the government may deem it unnecessary and may abolish it; but courts must presume that every office in existence is necessary; that the public welfare is pro-

moted by the performance of the duties attached to it; and that those duties should be discharged, without intermission, while the office continues to exist. The office being a trust created for the public good, it follows that a cessation of the benefits derived from it ought not to be sanctioned because of a failure to make an appointment by those whose duty it is to appoint. No such failure should be permitted to cause a temporary extinction of the trust. To guard against this evil there is usually a provision for holding over until the appointment and qualification of a successor, but it has been held in some of the states that, in the absence of any such provision, the incumbent should hold over until another person has been appointed and qualified, and it is intimated that he may reasonably presume that it is his duty to do so; for it must be borne in mind that an official is frequently the custodian of important books, papers, and other property, the care of which ought not to be abandoned, and which he cannot properly surrender to any one not legally authorized to assume control. *People v. Tilton,* 37 Cal. 614; *Kreidler v. State,* 24 Ohio St. 22." *Robb v. Carter,* 65 Md. 321 (4 Atl. 282, 283).

This public policy is recognized in our state constitution, (§§ 2 & 3, art. 3; § 5, art. 6; § 6, art. 27). It is the policy expressly declared by the charter of the city of Spokane. The freeholders' charter, adopted March 24, 1891, provided as follows:

"Sec. 9. The officers of said city to be elected by said city at large, shall be the mayor, treasurer, comptroller, city assessor and city attorney. Three councilmen shall be elected in each ward by the qualified electors therein. The corporation counsel, the city commissioners and such other officers to fill any office hereafter created as may be found necessary to carry out the provisions of this charter, shall be appointed by the mayor and confirmed by the city council. The city clerk shall be elected by the city council. The appointment of all other officers herein specified shall be made by the mayor, subject to

confirmation by the city council. All elective officers shall hold office until their successors are elected and qualified."

Section 10 provided for the time of the election of officers, and that they should hold their office until the annual municipal election in 1892, and until their successors were elected and qualified. Section 28 provided for the election of three councilmen in each ward for the terms of one, two, and three years. Section 79 was as follows:

"The corporation counsel shall be appointed by the mayor and confirmed by the city council, and shall hold office for one year and until his successor is duly elected and qualified. Provided, however, that he may be removed at the pleasure of the council. The corporation counsel must be an attorney of the supreme court of this state and must have been in the practice of his profession for at least five years."

Section 82 provided for the election of a city attorney as public prosecutor, and that he should hold his office for the term of one year and until his successor was duly elected and qualified. Section 92 provided for the appointment by the mayor and confirmation by the council of three city commissioners to serve for a certain designated period. Section 128 provided for a board of health to be appointed by the mayor and confirmed by the council. Section 129 fixed the term of office of the board of health. Section 168 provided for the election of a city treasurer. Section 218 was as follows:

"All officers elected at any general election after the election at which this charter is adopted shall hold their offices for the term of one year and until their successors are elected and qualified."

In addition to these provisions, the city charter contemplated the appointment of a chief of police and a

chief of the fire department, but made no express pro-
vision for the term of such officers and no provision as to
the manner of their appointment, other than in § 9, *supra.*
It was further provided that the board of health should
appoint and remove, by and with the consent of the city
council, a health officer; and his term of office was not
otherwise prescribed. It will be noted that the charter
thus contemplated the election of fifteen councilmen, the
mayor, treasurer, city assessor, and city attorney,—nine-
teen officers in all,—and the appointment of the corporation
counsel, three city commissioners, chief of police, chief
of the fire department, three members of the board of
health, and a health officer,—ten appointive officers. It
is expressly provided in §§ 9 and 218 that the elective
officers shall hold until their successors are elected and
qualified. It is further expressly provided that the city
attorney, who was an elective officer, and therefore
covered by the provisions of §§ 9 and 218, should hold
his office for one year and until his successor was elected
and qualified. It is expressly provided in § 79 that the
corporation counsel shall hold his office for the term of
one year and until his successor is elected and qualified.
The provisions for the appointment of a city commis-
sioner and the provision prescribing the term of office of
the members of the board of health did not contain a
hold-over provision, and no term of office was fixed for the
chief of police, chief of the fire department, or health
officer. In addition to the express provisions relative to
the specific officers mentioned, the charter contained the
following:

"Sec. 16. The terms of all officers not herein otherwise
provided shall cease upon the tenth day after the first
Tuesday in May, *but all officers shall hold their offices
until their successors are elected or appointed.*"

The term "elected or appointed," as used in this section, means selected in the manner provided by law to fill the office, and, when a confirmation is necessary by the city council, the appointment is not completed until such confirmation. The officer can then be said to have been appointed. Mechem, Public Officers, § 114. This section is a general section, and must be construed in connection with the specific provisions relative to the individual offices. The first clause of the section, by the reference to the terms of all officers *not herein otherwise provided,* is restricted in its application and fixes the date of the expiration of the term of such officers only as are "not herein otherwise provided." Where there is an express provision fixing the termination of the term at any other date, this first clause of § 16 is inapplicable. The second clause of the section, however, is without such restriction. The words "all officers" in that clause are unlimited; and the intention to make the section applicable to all cases is rendered clear by the omission in the second clause of the words "not herein otherwise provided," by which the words "all officers" are modified in the first clause, and the use of the disjunctive "but" to connect the two clauses. The second clause must be construed precisely as if it read, "All officers whether herein otherwise provided or not shall hold their offices until their successors are elected or appointed." That this is the true interpretation of § 16 is made manifest by the use of the term "elected or appointed." It had been in the charter elsewhere provided that all elective officers should hold office until their successors were elected and qualified, and, since the particular sections of the charter providing for the elective officers also provided that they should hold office until their successors were elected and

qualified, the second clause of § 16, providing for all officers elected, necessarily included the same officers, although they were elsewhere otherwise provided for. The provision in the second clause of § 16 cannot be given a more restricted, limited, or qualified application when referring to appointive officers than it has when referring to elective officers. It relates to and controls the term of office of corporation counsel, notwithstanding there was an express provision that he should hold office until his successor was duly elected and qualified, quite as much as it does to the terms of the city commissioners, board of health, or other appointive officers, concerning whom there was no express provision for holding over elsewhere given, and quite as much as it does to the city attorney, mayor, treasurer, comptroller, and other elective officers, whose terms of office were elsewhere expressly made to continue until their successors were elected and qualified. Any other construction would require the court to say that the words "all officers elected or appointed" did not mean all officers elected or appointed, but meant none of the elective, and part only of the appointive, officers. We conclude that § 16 means precisely what it says,—that all officers, elective and appointive, should hold over until their successors were elected or appointed. It declared the fixed policy of the city that there should be no interregnum between the term of one of the officers and the induction of his successor; that there should, under no circumstances, where it could be avoided, be an office without an incumbent to protect the public interests. At the election held May 2, 1893, § 79 of the charter was amended to read as follows:

"The corporation counsel shall be appointed by the mayor and confirmed by the city council, and shall hold office for the term of one year, and until his successor is

duly elected and qualified. The corporation counsel must be an attorney of the supreme court of this state, and must have been in practice of his profession for at least five years. The corporation counsel may be removed upon recommendation of the mayor, by a majority vote of all the members of the city council, or may be removed by the vote of two-thirds of the members of the council after charges have been preferred. The corporation counsel shall give a sufficient bond to the city in the sum of five thousand dollars conditioned for the faithful performance of his duties."

Sections 9 and 78 of the charter also were amended, and § 82 was repealed. The effect of these amendments was to abolish the offices of city attorney and assessor. The amendment to § 79 authorized the removal of the corporation counsel, upon recommendation of the mayor, by a majority vote of all the members of the city council, or by the vote of two-thirds of the city council after charges had been preferred. It is clear that none of these changes in any wise affect the construction to be placed upon §§ 9, 16, 79 and 218, as to the tenure of office of the various officers provided for. The provision in §§ 9 and 218, that all elective officers shall hold office until their successors are elected and qualified remained as before, and must receive the same construction. Section 16 remained intact and continued to provide that all officers, whether otherwise in the charter provided for or not, should hold office until their successors were elected or appointed, and still included within its terms the elective officers and corporation counsel otherwise provided for in the charter and the appointive officers. The next amendment to the charter was adopted May 7, 1895. Section 9 was amended to read as follows:

"Sec. 9. The officers of said city to be elected by said city at large shall be the mayor, treasurer and comptroller

who shall each hold their office for the term of two years
from and after the tenth day after the first Tuesday in
May, A. D. 1895, and until their successors are elected
and qualified. Two councilmen shall be elected in each
ward. The corporation counsel, the city commissioners
and such other officers now existing and such other officers
as may be necessary to fill any office hereafter created, to
carry out the provisions of this charter, shall be appointed
by the mayor subject to confirmation by the city council.
The city clerk shall be elected by the city council. The
appointment of all other officers not herein specified
shall be made by the mayor, subject to confirma-
tion by the city council. The corporation counsel
shall hold office for the term of two years, and all
of section 79 in conflict with this section is hereby
repealed. All elective officers shall hold office until
their successors are elected and qualified; provided, the
city council may by ordinance, two-thirds voting therefor,
authorize the corporation counsel to appoint one or more
assistants, whenever the interests of the city demand such
appointment, and provided that section 81 of article V of
the freeholders' charter adopted March 24, A. D. 1891,
be and the same is hereby repealed."

No change was made in § 16 or in § 79 or § 218, except
such as resulted by necessary implication from the adop-
tion of the amendment to § 9 making it read as above
stated. Other sections were at the same time amended.
Section 28, as amended, provided for the election of the
councilmen, etc. The first thing to be noticed is that § 9,
as now amended, declares that the mayor, treasurer, and
comptroller shall each hold office for the term of *two*
years. It will be noticed that this change, by necessary
implication, repealed the provision of § 218 that these
officers should hold office for the term of one year. The
term of office of the councilmen was also altered to two
years. In conformity with these two changes in the
terms of office of the mayor, etc., the term of office of the

corporation counsel was modified by the following pro-
vision:

"The corporation counsel shall hold office for the term
of two years and all of section 79 in conflict with this
section is hereby repealed."

The clear purpose of the amendment, so far as it related
to the mayor, treasurer, and comptroller, was to enlarge
the term of this office to two years from and after the date
mentioned. That being done, it was eminently proper
that the term of the corporation counsel should be in-
creased to the same period, and it is clear that this was the
whole object of the amendment relative to the term of
that officer. The only portion of § 9, as amended, which
relates to the term of the corporation counsel, and which
can by any construction be held to conflict with § 79, is
the provision that the corporation counsel shall hold office
for the term of two years. We have seen that the rule
of law is that an officer shall hold office until his successor
is appointed and qualified, unless by the language of the
statute such holding over is expressly or by clear impli-
cation prohibited; and the language of § 79, even if we
construe the amendment as abrogating the clause, "and
until his successor is duly elected and qualified," fails to
prohibit, either expressly or impliedly, the holding over
of the corporation counsel. It is to be noted, in determin-
ing the extent and effect of the repealing clause of § 9 as
amended, that no reference to or amendment of § 16 is
made or suggested. That section, with its declaration of
the settled policy of the city that there shall be no vacancy
in office by reason of a failure to elect or appoint and con-
firm a successor to any office, remains intact. Its con-
struction remains as it had been from the first, and its
unchanged continuance in the charter negatives the idea
that the amendment to § 9 repealing a portion of § 79 was

intended to affect in any way the right and duty of the corporation counsel to hold over until his successor was appointed. Any other construction requires the court to hold that by the express repeal of a portion of § 79 the last clause of § 16 was impliedly repealed, although no mention of that section, or of any intent to change or modify its provisions, is suggested. Such a construction is not permissible. The court is bound to presume that the amendment adopted in May, 1895, was adopted with deliberation, and with full knowledge of all existing charter provisions upon the same subject. It is but reasonable to presume that, if it was the purpose to prohibit by this amendment the holding over of the corporation counsel, such intention would have been clearly expressed, and an express repeal of so much of § 16 as conflicted with that intention would have been coupled with the express repeal of the portion of § 79. By the charter the corporation counsel is declared to be the law department of the city. This is another reason for holding that he remains in office until his successor is appointed, for it certainly was never intended that a department of the city government should not be continuous.

We therefore conclude that the appellant rightfully held the office of corporation counsel of the city of Spokane, under the allegations of the affidavit, which are admitted by the demurrer, during the entire month of May, 1901, and was entitled to his warrant for that month. The court below should have overruled the demurrer. The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

REAVIS, C. J., and ANDERS, MOUNT and HADLEY, JJ., concur.

FULLERTON, J., concurs in the result.

Dunbar, J. (concurring).—It is a little difficult for me to understand what is intended to be expressed by the writer of this opinion on the motion to dismiss; but in consideration of the numerous opinions and decisions of this court to the effect that the constitutional limitation applies to mandamus, certiorari, and prohibition proceedings, where the amount involved does not exceed $200, I presume the intention is to decide that the present action is not for the recovery of money at all, but that it is an action to compel an administrative officer to perform the duties of his office. I therefore concur. I also concur in what is said on the merits.