CHESTER NAESETH v. VILLAGE OF HIBBING.[1]

March 18, 1932.

No. 28,791.

[1]Reported in 242 N. W. 6.

*John E. Hario* and *Clarence H. Kleffman,* for appellant.
*Naughtin & Henley,* for respondent.

STONE, J.

Plaintiff had a directed verdict. Defendant appeals from the order denying its alternative motion for judgment notwithstanding or a new trial.

For some time before January, 1931, plaintiff had served defendant village as its chief of police. At that time the village had a police civil service commission created and functioning under the statute hereinafter discussed. Under that statute, as we shall see, the commission rather than the village council has the exclusive power to discharge a police officer. Notwithstanding, and in January, 1931, the village council adopted a resolution attempting to discharge plaintiff and to discontinue his salary as of February 1, 1931. This action proceeds upon the theory that the attempted discharge was void. The purpose is to recover instalments of salary accruing after February 1, 1931.

The police civil service commission of Hibbing was appointed under L. 1929, p. 377, c. 299, Mason, 1931 Supp. §§ 1933-48 to 1933-63. Defendant's claim is untenable that it does not give the commission power to discharge the chief of police. By § 5 there is vested in the commission "absolute control and supervision over the employment, promotion, discharge and suspension of all officers and employees of the police department." As though that language were not enough, it is then declared that "these powers shall extend to and include all members of the police department." Section 6, in requiring the adoption of rules by the commission, includes "all offices and employments in the police department."

There is nothing specific to exempt the department head. On the contrary, everything confirms the conclusion that he is in-

cluded. The plain purpose of the act could not be accomplished otherwise. The statute doubtless is a legislative reaction to the prevalent feeling that crime is on the increase, and the too frequent failure of police to apprehend the perpetrators. To punish a criminal you must first catch him, and that is the duty of the police. The purpose was to permit cities and villages to remove that highly important function from the debilitating influence of politics. They were authorized to vest the whole power over police personnel in independent commissions, to be made up, it was hoped, of men who, guided alone by a high sense of civic duty, would procure the best possible police protection for their own communities. To that end they were given wide powers, including that of removal, which, for the six months allowed for reorganization under a new commission, can be exercised summarily. Saholt v. City of Rochester, 185 Minn. 510, 242 N. W. 4.

Doubtless the framers of the law had in mind such things as the manner in which slot machines, mechanically dishonest and legally criminal, are yet permitted too generally to prey on the savings of the unwary. In village or city, the fault, whoever else may share it, is that of the police department. To cope with such a situation, power over patrolmen without similar jurisdiction over their commanding officer would be inadequate if not futile. The simple and efficient remedy is to discipline, not the underlings who obey but the department head who commands. It was the intention of the legislature to make the right of removal the power for good it ought to be by putting it in the hands of an independent commission. Exemption of department heads would go far to frustrate its whole purpose, and so is not to be read into the law by unnecessary and strained implication.

It is just such an artificial and arbitrary construction that we are urged to put upon the language of § 7, requiring that in case of removal "the finding and decision of such commission shall be forthwith certified to the chief or other appointed or superior officer, and will be forthwith enforced by such officer." There is nothing dubious about that sentence. Nothing is more simple than for an officer to remove himself. Yet counsel for defendant would

have us say that the legislature could not have intended that a police chief could enforce, i. e. obey, an order removing himself. Hence, it is urged, police chiefs are not within the scope of the act. Such is the artificial reasoning used to create a synthetic ambiguity. It ignores the fact that the purpose of construction is to remove ambiguity and not to make it. Reading the whole law in the light of its plain purpose, we must and do hold that the jurisdiction over the whole police department, put by the act in the police civil service commissions, includes the department heads and is exclusive. Defendant's village council had no power to discharge plaintiff. Its attempt to do so was void.

■ Argument that the police civil service commission law is special legislation, within the meaning of the constitutional inhibition (Minn. Const. art. 4, § 33) is put at rest by State ex rel. Benson v. Peterson, 180 Minn. 366, 230 N. W. 830, wherein we sustained a similar law (L. 1929, p. 54, c. 57) providing for "firemen's civil service" commissions. But, it is argued for defendant, the law provides for "two classes [of police] to which it does not apply alike; one class who are assured life positions and another who are not given that protection under the law"; it is not equal or uniform in operation. The point is that in villages and cities which exercise the power conferred and create civil service commissions the members of the police department may hold office, once they get it, until discharged for cause; whereas, in cities and villages which do not take advantage of the statutory power and go on without police civil service commissions, the police officers are subject to discharge at the will of the council or other appointing body.

There is no constitutional objection to the law simply because it allows wide play to local self-government or because it does not cover as much territory as it might. Miller v. Wilson, 236 U. S. 373, 35 S. Ct. 342, 59 L. ed. 628, L. R. A. 1915F, 829; Tait v. Schmahl, 164 Minn. 122, 204 N. W. 637. As to equality or uniformity of operation, it is enough that a law operates uniformly within its scope. This statute plainly meets the test. It is not mandatory, but only an enabling act granting specified powers. It makes no discrimination in its bestowal of power. There is no

objection on constitutional grounds that some grantees of statutory power do not see fit to exercise it or that they will not all use it in the same manner and with identity of effect.

Equally without merit is the argument that the law is invalid because embracing a subject not expressed in the title. (Minn. Const. art. 4, § 27.) The scheme of having policemen get "employment only after a showing that they are entitled to such through pure merit" is easily within reach of the title, indicating the purpose to create police civil service commissions and prescribing their powers, duties, and procedure.

■ No verified claims for the instalments of salary claimed were filed by plaintiff. Defendant invokes G. S. 1923 (1 Mason, 1927) § 1222, to the effect that "no money demand" against a village "shall be paid until audited and allowed by the council * * *. Such demand shall be made out in items, and be verified by an attached affidavit that the claim is just and correct, and that no part of it has been paid."

Of course this statute is mandatory. But it has no application to salaries of public officers. The similar law concerning claims against counties, G. S. 1923 (1 Mason, 1927) § 766, is expressly made inapplicable "to any claim or demand for an annual salary." And while § 1222, referring to villages, is in general language and without exception, the absurdity of making it apply to regularly and continuously employed persons, whose compensation has already been fixed either by law or order of the common council, would be such as to make that construction impossible. Again, obvious purpose of a law controls interpretation. "Where general language construed in a broad sense would lead to absurdity it may be restrained." 2 Lewis, Sutherland Stat. Cons. (2 ed.) 722. This statute was not intended to command a procedure either unnecessary or nonsensical. Yet that would be the result were we to say that no instalment of official salary could be collected until the officer had gone through the form of filing a verified claim.

This seems the first time the precise question has been presented to this court. But in Manson v. Village of Chisholm, 142 Minn.

94, 95, 170 N. W. 924, we held that the statute did not apply to a claim for damages arising from a change in street grade. "The section was intended to apply only to claims of a character usually susceptible of being itemized, and of being audited according to ordinary business usage." Similar statutes elsewhere have been given a similar construction. In addition to the authorities cited in the Manson case, see Wynne v. City of Butte, 45 Mont. 417, 123 P. 531. "Where a law or ordinance fixes a salary to be paid to a public officer," there is nothing to be audited. State ex rel. Dudley v. Daggett, 28 Wash. 1, 14, 68 P. 340, 344. For the same reason, that there is nothing that can be verified or audited, the statutes are held not to apply to a claim for tort. Dawes v. City of Great Falls, 31 Mont. 9, 77 P. 309; Lay v. City of Adrian, 75 Mich. 438, 42 N. W. 959. For official salaries, "the law [or contract] fixes the liability as well as the amount"; so there is nothing left to audit or allow before payment. City of Fergus Falls v. Board of Co. Commrs. 88 Minn. 346, 348, 93 N. W. 126, 127.

Another point is made concerning some supposed failure of plaintiff to file an oath of office. We do not go into that because, whatever the reason, it was beyond the power of the common council to discharge him. Hence he has never been discharged.

The order appealed from must be and is affirmed.