### H. H. SAHOLT v. CITY OF ROCHESTER.[1]

March 18, 1932.

No. 28,755.

A. H. Clemens and McVeety & Hunt, for appellant.
James T. Spillane, for respondent.

[1]Reported in 242 N. W. 4.

STONE, J.

By an order of the police civil service commission of Rochester, plaintiff was removed, without formal charges or hearing, from his office as chief of police of that city. This action to recover salary challenges the validity of that removal. It comes to us on appeal from an order overruling a demurrer to the answer, the question involved having been certified as one of importance and doubt. G. S. 1923 (2 Mason, 1927) § 9498(4).

Plaintiff had served more than six months but not that long under the commission. That body, organized April 13, 1931, made its order of May 29, 1931, removing plaintiff "for the good of the service," effective June 15, 1931. Plaintiff claims the benefit of § 7 of the police civil service commission law (L. 1929, p. 377, c. 299, Mason, 1931 Supp. §§ 1933-48 to 1933-63) providing that "no officer or employee after six months' continuous employment shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense as in this chapter hereinafter provided."

If § 7 were to be considered by itself, apart from the rest of the statute and its purpose, it would not be difficult to agree with the argument for plaintiff. But it runs so directly contrary to the intention of the statute and would so tend to thwart its purpose that the contrary view must be taken. The purpose of the act, as pointed out in Naeseth v. Village of Hibbing, 185 Minn. 526, 242 N. W. 6, was to bring about a much needed reform in municipal police administration in Minnesota. The whole act is implicit with that purpose, particularly §§ 13, 14, and 15, which make it a misdemeanor for an applicant for a position on the police department, or an employe thereof, to resort to "trading" of any kind, political or otherwise, to get or hold his position or to be in any manner concerned, at either end of the process, in the collection of assessments or contributions for political purposes.

Again to be emphasized is the fact that by § 5 the commissions are given "absolute control and supervision over the employment, promotion, discharge and suspension of all officers and employees

of the police department." Upon that general grant is placed the restriction of § 7, providing that "no officer or employee after six months' continuous employment shall be removed or discharged except for cause, upon written charges" and after a hearing. The precise scope of that limitation is the one question to be determined now.

By § 5 it is made the duty of the commission, "immediately after its appointment," to "grade and classify all of said employees of the police department" and to enter their names upon a service register. The commission is given absolute control and supervision over an organization which it is directed to grade and classify immediately. This plenary power is given explicitly over the "employees of the police department" themselves. It would be lamed at the outset, and in some cases disabled, did it not include the power to demote or remove an incompetent department head placed and retained in his position by an old regime which it was the very purpose of the act to supersede. That purpose could not be accomplished unless the new commissions were given a free hand to select their own men. If such an organization as a police department is deficient, the fault is usually not with the rank and file but with those in authority. If there are to be changes in the interest of law enforcing efficiency, the sensible place to begin is where lies the responsibility for the condition to be remedied. Laws of this sort are passed in the light of just such facts of common experience and should be construed accordingly.

Section 7, giving an employe of six months' or more continuous employment the right to a hearing upon written charges before removal, has its full and intended effect if it be restricted, as we think it should be, to those officers and employes retained by the commission for six months or more. The opposed construction would so far hamper the commission, not only in its initial organization of the department confided to its care but also in its subsequent operation under the system of competitive examinations provided for by the act, that it must be rejected. That view is confirmed by the concluding sentence of § 8, which requires that the commission "shall prescribe standards of fitness and efficiency for each office,

position, and employment and for each grade, and adapt its examination thereto." It is easily conceivable that some police chiefs, selected for political rather than professional merit, would fall below the standard of fitness and efficiency for their office fixed by the commission. In such a case the law intends that a commission shall have the power of summary removal during the initial six months of its regime.

The idea was to permit a commission to clean the slate and start anew. It could not do that were it compelled to take the personnel already selected by agencies the summary end of whose control was the very thing aimed at by the statute. This phase of the matter was thus well dealt with in the decision below:

"Thus, if the city's interpretation of the law is correct, the police commission can order examinations for all positions and select those who can prove themselves the best fitted to perform the duties of the offices they seek to fill and reject the rest.

"If, however, plaintiff's interpretation of the law is correct the commission can only fill vacancies caused by death, voluntary resignation or discharge of those found guilty of inefficiency, breach of duty or misconduct. The force may be dominated by men who perform their duties just well enough to escape the filing of charges against them, or to avoid the proof of actual inefficiency, breach of duty or misconduct, and yet be greatly inferior to men who would have been appointed to their positions if the commission had been invested with the power to do so. In a force the size of Rochester, it might take ten years or more to eliminate such men, whereas if the city's position is correct they would be eliminated at once."

The order is affirmed.