FARMERS' LOAN & TRUST CO. v. MEMPHIS & C. R. CO. et al.

(Circuit Court, W. D. Tennessee. February 10, 1897.)

AGENCY—RATIFICATION OF AGENT'S ACTS BY PRINCIPAL—EFFECT.

Under a provision of a railroad mortgage that, on default in payment of any installment of interest, continuing for 60 days, the holders of one-third in amount of the bonds secured might declare the principal of the debt due, by an instrument executed by them "or their attorneys in fact thereto duly authorized," and delivered to the trustee, such a declaration of maturity was signed by a person as attorney in fact for his wife and two brothers, who were bondholders. He had no written authority at the time, but an instrument ratifying his act was executed by the persons for whom he acted after the filing of a bill for foreclosure by the trustee. Held, that such ratification rendered valid and effective the act of the attorney as against the mortgagor and a second mortgagee.

Bill for foreclosure by the Farmers' Loan & Trust Company against the Memphis & Charleston Railroad Company and others.

Turner, McClure & Ralston and Estes & Fentress, for complainant. F. P. Poston and Turley & Wright, for defendants.

LURTON, Circuit Judge. This is a bill under which it is sought to foreclose a mortgage styled the "First Consolidated Mortgage" of the Memphis & Charleston Railroad Company. It was intended that two older series of bonds would be retired by bonds secured hereunder. In part this has been done, though not altogether. It is therefore sought to sell subject to the lien of the senior outstanding mortgages. This consolidated mortgage was made August 20, 1877, to secure an issue of bonds aggregating $4,700,000. Of these only $2,264,000 have been actually issued. The remainder are in the hands of the trustee, and held for the purpose of taking up outstanding first and second mortgage bonds. These consolidated bonds mature January 1, 1915, and have annexed coupons for interest, pay-

able each recurring six months. The case comes on now to be heard upon the pleadings and proof, and a final decree of foreclosure is sought, both for principal and interest. The right to such a decree is predicated upon a default in the payment of interest accruing July 1, 1893, January 1, 1894, July 1, 1894, January 1, 1895, and July 1, 1895; this bill having been filed August 2, 1895.

The bill particularly alleges that demand had been made for the payment of the interest accruing July 1, 1893, and that payment was refused; that this default continued for more than 60 days after such demand; that thereupon holders of more than one-third in value of the outstanding bonds had, by an instrument in writing, filed with the trustee, elected that the principal of the said bonds should immediately become payable, and requiring the trustee to foreclose the mortgage. This precipitation of the maturity of the principal of the bonds is claimed or asserted by virtue of the first proviso of the mortgage, which is in these words:

"In case default shall at any time be made by the party of the first part in the due and punctual payment of any installment of semiannual interest at any time becoming due and payable upon any of the said bonds within the aggregate amount of forty-seven hundred thousand dollars, issued under the security of this mortgage, as aforesaid, and if any such interest shall remain in arrear and unpaid for sixty days after demand thereof, then, and in such case, if, and when thereafter, the holders at the time being of one-third in amount of the then outstanding bonds issued under and entitled to the benefit of the security of this mortgage shall, by instrument or instruments executed by them respectively, or their attorneys in fact thereto duly authorized, and delivered to the party of the second part, or its successor or successors, as trustees hereunder, so elect, the principal sum secured by and payable upon all and singular the said bonds, within the aggregate amount of forty-seven hundred thousand dollars, issued under the security of this mortgage as aforesaid, with all arrears of interest thereon, shall become immediately due and payable, although the time for the payment of said principal originally stipulated in said bonds shall not yet have arrived; anything in the said several bonds contained to the contrary notwithstanding."

Every important averment of this bill is put in issue both by the Memphis & Charleston Railroad Company and the Central Trust Company of New York, which is made a defendant to the bill as trustee under a mortgage junior to the consolidated mortgage. The principal objection urged against a decree of foreclosure for the principal of the mortgage debt turns upon the authority of one D. Willis James to sign the declaration of maturity for his wife, who owned four bonds of $1,000 each, and for two brothers, each owning twenty bonds of $1,000 each. Mr. James signed the names of his wife and brothers by himself as attorney. The defendants say that he was not the "attorney in fact thereto duly authorized" of the said signers, and that, if these names be eliminated, a valid election by one-third in value of all outstanding bonds has not been declared. It clearly appears that Mr. James had a general parol authority from his wife and brothers to act for them as he deemed best in respect to the management and disposition of these securities. But it is also admitted that he had no written letter of attorney particularly authorizing him to do this act. That these persons owned the bonds for which their names are signed is sufficiently made out by the general statement to that effect in Mr. James' deposition. Being

wholly undisputed, we see no reason for inquiring into the source of his information. After the filing of this bill, these persons, in writing, formally confirmed and ratified the act of D. Willis James in making the declaration of maturity now in question. If the legal effect of this ratification is to put the agent in same position as if he had had authority to do the act when done, there is no necessity for considering the question at the bar as to the meaning of the provision in the mortgage touching the election of holders of bonds through "attorneys in fact thereto duly authorized." The general doctrine in respect of the ratification of the acts of one assuming without authority to act for another is that a subsequent "ratification operates upon the act ratified precisely as though the authority to do the act had been previously given." Cook v. Tullis, 8 Wall. 338. "In short," says Justice Story, "the act is treated throughout as if it were originally authorized by the principal, for the ratification relates back to the time of the inception of the transaction, and has a complete retroactive efficacy, or, as the maxim expresses it, 'Omnis ratihabitio retrotrahitur.'" Story. Ag. § 244. The principle is clearly stated in the well-considered case of Wilson v. Tumman, 6 Man. & G. 236, where it is said:

"An act done for another by a person not assuming to act for himself, but for such other person, though without any precedent authority whatever, becomes the act of the principal, if subsequently ratified by him. In such case the principal is bound by the act, whether it be for his detriment or advantage, and whether it be founded on a tort or on contract, to the same extent, and with all the same consequences, which follow from the same act done by his previous authority."

Counsel for defendants seek to take this case without the general effect of ratification by an application of the not very clear statement of a limitation found in section 246 of Story on Agency, where it is said that third persons will not be bound by the retrospective consequences of ratification "if the act done by such person would, if authorized, create a right to have some act or duty performed by a third person, so as to subject him to damages or losses for the nonperformance of that act or duty, or would defeat a right or an estate already vested in the latter." This limitation is evidently deduced from such cases as Buron v. Denman, 2 Exch. 167, Right v. Cuthell, 5 East, 491, and Mann v. Walters, 10 Barn. & C. 626. These were cases of notices given of the determination of leases by unauthorized persons assuming to be agents of the landlord. That Judge Story bases his text upon that class of cases is not only evident from the cases cited in the notes to the text, but from the stronger fact that he illustrates the meaning of an otherwise cloudy statement by the illustration:

"Thus, if a lease contains a condition that it may be determined by either party upon six months' notice, such notice, given by an unauthorized person for the landlord, although subsequently ratified and adopted by the latter, will not be a valid notice to determine the lease."

The ground upon which such cases have been put is that stated in the subsequent part of the section from which I have been quoting, namely, that a notice to defeat an estate should be such a one as

that the tenant can safely act upon at the time he receives it, "so that he may deliver up the possession at the end of six months, without being liable to further claims in respect to the remainder of the term." The cases upon this subject have not been uniform. To this Judge Story calls attention in a footnote. In Roe v. Pierce, 2 Camp. 96, a verbal notice to quit, by a steward of a corporation, was held ratified and binding by the corporation bringing a suit founded on the notice; and in Goodtitle v. Woodward, 3 Barn. & Ald. 689, the decision is put upon ground quite antagonistic to the cases first cited. If such cases as Buron v. Denman and others cited above are supportable, it must be upon the ground that the tenant ought not to be subjected to the hazard of going out and remaining liable thereafter because the landlord elected to repudiate the notice given in his name. If not rested wholly upon this narrow ground, they are in seeming conflict with an older line of cases holding that an entry to make a claim, or to avoid a fine, or for a condition broken, if made by a person assuming to be the agent of the principal entitled to such claim or entry, would justify an action upon such acts by the principal upon the ground that his subsequent ratification would supply the want of an original authority. Story, Ag. § 245; Co. Litt. 258; Fitchet v. Adams, 2 Strange, 1128.

The distinction between the class of cases last cited and those of a notice to terminate a lease is very refined, and, as observed by Judge Story in a note to section 246 of his work on Agency, "stands upon reasoning not very satisfactory or clear." Judge Story, in his text, states the supposed distinction to be this: that in the latter case "the third person's act is not to depend upon the validity of the entry at the time when it is made." And so, he adds:

"The rule, 'omnis ratihabitio retrotrahitur et mandato priori æquipareatur,' seems applicable only to cases where the conduct of the parties on whom it is to operate, not being referable to any agreement, cannot, in the meantime, depend on the fact whether there be a ratification or not."

Counsel for defendants do not—and I say it with deference—make a proper application of Judge Story's deduction from the leasehold cases. They say, in their printed argument, this:

"The underlying principle is perfectly plain. If A. has acted as the agent of B., and B. has ratified the act done, and taken advantage of it, if C. thereupon sues B. upon such act recognizing the agency, B. and C. have both (the one by the ratification of, and the other by his suit, recognizing the agency) estopped themselves mutually from denying it. But if A., not being the agent of B., undertake to act for him so as to allow B. to acquire a right against C., and B., by ratification, attempt to acquire such right as one arising at the time A. acted, and dating back to such time, such ratification is unavailing over C.'s objection. There is no mutuality in the estoppel. Until B. ratified, he was not bound, and, C. having done no act to consent to the ratification and recognition of the unauthorized agency against C. in invito, the agency cannot exist except from the time the authority was actually given. It is not the case of a party being bound by the ratification of an agency, but of a party seeking by his own act of ratification to bind the other party. A similar case would be where a plaintiff recognized a person who was not defendant's agent as such agent, while defendant refused to recognize and ratify, and who sought to bind defendant by the acts of such unauthorized agent because plaintiff had ratified his acts. This, of course, is absurd, but it is the reductio ad absurdum of complainant's position in this case."

But that the effect of ratification is to bind the other contracting party is the very consequence of the retrospective effect of ratification. The books are full of cases in which the third party was held bound by a subsequent ratification. Were this not so, the act of "ratification would not be dragged back, as it were, and made equipollent to a prior command," as the matter is put by Baron Martin in Brook v. Hook, L. R. 6 Exch. 96. "Thus," Judge Story says, "the effect of ratification is not only to bind the principal as to his agent, but as to the third party, and give the ordinary rights and remedies both for and against him." Story, Ag. § 245.

In Wharton on Agency it is said:

"The third party contracting is bound from the time of the institution of the contract, and not merely from that of the ratification. The principal, by the act of ratification, puts himself in his agent's place. From this it follows that the ratification acts retrospectively, and nowhere is this more unhesitatingly expressed than in the Roman law. But," adds Prof. Wharton, "accepting this principle as unquestioned, we must limit its application to the relations of the principal to the contracting third party. The third party is precluded from contesting the right of the principal to go back to the original inception of the contract." Whart. Ag. §§ 76, 77.

In the Law of Contracts, by Leake, at page 391, it is stated that:

"The principal may also claim the benefit of a contract professedly made on his behalf, and though it was made without his knowledge."

A few illustrations from leading cases may serve to show how the retrospective effect of ratification has found application. Where contracts were made in the name of the state, but without authority, a subsequent ratification was held to bind the third party in suits upon the contract. Ohio v. Buttles' Ex'r, 3 Ohio St. 309; Wisconsin v. Torinus, 26 Minn. 1, 49 N. W. 259; Iowa v. Shaw, 28 Iowa, 67. Where insurance was effected by an unauthorized agent upon the interest of the plaintiff in a ship, it was held that the ratification of this act after the loss of the ship was operative, and made the contract binding upon the insurer. Hagedorn v. Oliverson, 2 Maule & S. 485. Where an offer of sale, made by C., was accepted by B. for A., it was held that by ratifying the act of B., though after the offer had been withdrawn, the contract was validated as of the date of the original acceptance, and that the intermediate withdrawal was ineffective, and C. bound by the contract. Bolton v. Lambert, 41 Ch. Div. 295. This case was followed in Re Portuguese Consolidated Copper Mines, 45 Ch. Div. 16. In the case last cited certain shares in the corporation had been subscribed for, and allotments made, in the name of the corporation, by a board having no authority. Subsequently these allotments were ratified by the corporation acting by a legal board of directors. It was held that the subscribers were bound, although they, before ratification, had withdrawn their subscriptions. That Mr. James' principals did not ratify his act until after this bill was filed seems of no importance if the ratification is to be given a retrospective effect. Where a bill was indorsed to one Ancona, and a suit brought in his name as plaintiff by one assuming to be his agent, it was held that Ancona's ratification, after suit brought, of what had been done before, was equivalent to a prior authority. Ancona v. Marks, 7 Hurl. & N. 686. These cases abun-

dantly illustrate what is meant by the ratification being equivalent to a prior command, and serve to show that the effect is not only to bind the principal ratifying the act, but also the other contracting party. There are exceptions to this rule, such as have been mentioned by both Story and Wharton, namely, it will not be permitted to defeat an estate vested in the third party, as in Lyell v. Kennedy. 18 Q. B. Div. 796, and it will not be suffered to affect innocent strangers who have acquired intervening rights by levy, attachment, or otherwise. Wood v. McCain, 7 Ala. 806; Whart. Ag. §§ 77–79; Taylor v. Robinson, 14 Cal. 396. Certainly neither the railroad company nor the junior mortgagee have acquired any intervening rights to be affected by ratification, and it is not pretended that its effect will be to defeat any vested estate. Neither can it be said that the conduct of the railroad company, on whom ratification is to operate, depended in the meantime on whether there would be ratification or not. The holders of these bonds had an option to mature the principal according as they should deem best. That option arose out of the default of the railroad company in respect of interest. When that default was suffered to continue for 60 days after demand, the option arose, and could only be cut off by payment before a declaration of maturity.

The coupon in respect to which the original bill made a definite statement of demand was paid, but not until after the declaration of maturity. which declaration operated, when filed with the trustee, to mature the principal. It follows, therefore, that payment of that coupon did not defeat the suit, for the whole debt was due and unpaid, except the coupon of July, 1893. Between the filing of the instrument of maturity and the time of ratification the debtor company did nothing, and incurred no loss, risk, or danger. The instrument purported to be signed by one authorized to act for those whose names he signed. It was an act clearly in the interest of those for whom he assumed to act, and its ratification could not possibly work a surprise. It was only a matter of evidence whether James had authority to sign for his wife and brothers, and "proof of subsequent ratification is sufficient, and dispenses with proof of prior authority, though the prior authority is required to be in writing or under seal." Leake, Cont. pp. 388–391; Tupper v. Foulkes, 9 C. B. (N. S.) 797; Bolton v. Lambert, 41 Ch. Div. 295.

Commenting on the conflict we have referred to in an earlier part of this opinion, Prof. Wharton says, at section 80 of his Commentaries on Agency:

"The true distinction seems to be this: If ratification on part of principal was an act to be anticipated as morally certain by parties having adverse interests, then the ratification is no surprise to them, and cannot mislead them, and they are bound to treat the original unauthorized act as one which is to be authorized."

Applying this to the defendants, they must be regarded as bound by the ratification which, in view of the relationship borne by D. Willis James to those he assumed to represent, and the obvious interest they have in ratifying what he did, can be no surprise to them. In this view of the case, it becomes unnecessary to say whether this bill

might be maintained as a bill to foreclose for interest alone, or how it might be maintained as a bill filed under the discretion of the trustee. Ratification operating as an original command, the bill is well filed, and a decree of foreclosure may be drawn, unless within a short time the defendant company shall discharge both principal and interest of the mortgage debt.