### In re TIDEWATER COAL EXCHANGE.

(District Court, S. D. New York.   July 26, 1921.)

1. **Bankruptcy** ⬤⟿89 (1)—**Answers not putting in issue material allegation no hindrance to adjudication.**

> Answers to an involuntary petition in bankruptcy not putting in issue any material allegation of the petition, but merely alleging that the alleged bankrupt cannot be adjudicated, which is matter of law, and that it is not insolvent, which is irrelevant, and lacking a material traverse, are no hindrance to the adjudication.

2. **Associations** ⬤⟿18—**Executive committee of coal shippers' association had general authority.**

> Between annual meetings of members of a coal exchange formed by shippers of bituminous coal at the instance of the Council of National Defense during the war with Germany, *held*, that the executive committee,

the only body in existence capable of acting at all for the exchange, an unincorporated association, had complete authority to do everything which a normal board of directors of a corporation could do.

**3. Associations ⬡⟹18—Vote of part of members of executive committee held not legal.**

Where the executive committee of a bituminous coal shippers' association normally consisted of 11 members, but only nine were ever elected, and one of the nine had resigned, though his resignation was not accepted, three members of the committee, and two other persons holding proxies to act for two other members of the committee, which five united in a certain vote, did not produce a legal vote of the executive committee of the association, though the business of the committee had customarily been conducted in such manner.

**4. Associations ⬡⟹18—Discretionary powers of committee not delegable.**

Discretionary powers of the executive committee of an unincorporated association could not be lawfully delegated.

**5. Associations ⬡⟹18—Other members of committee of association could ratify void resolution.**

An act done by three of the nine members of the executive committee of an unincorporated association on behalf of the association or company, and in its name, though unauthorized, might be ratified by acquiescence after knowledge brought home to the other members of the committee; if the other members had knowledge of the particular resolution, which was ineffectual as concurred in by only three of the nine members of the executive committee, etc., and after a reasonable time for repudiation remained acquiescent, or expressed their concurrence, they must be deemed to have ratified it, and it became valid ab initio.

**6. Associations ⬡⟹18—Resolution of committee of unincorporated association held ratified by nonvoting members.**

A resolution of three of the executive committee of nine of an unincorporated association, which resolution constituted an act of bankruptcy, *held*, under the evidence, by filing of an answer to the involuntary petition in bankruptcy by the attorney for the exchange, ratified by the other members of the committee as of the time of adoption, so that an adjudication was valid.

**7. Bankruptcy ⬡⟹88 (2)—Motion to intervene denied in discretion of court for delay of two months.**

Motion to intervene in bankruptcy proceedings by applicants who allowed a default of nearly two months to run against them without any excuse whatever may be denied, in the discretion of the court.

In Bankruptcy. In the matter of the Tidewater Coal Exchange, bankrupt. On motion for adjudication by petitioning creditors, on motion to strike out certain answers, and on motion of the Delaware Steamship & Commerce Corporation to be allowed to intervene and file an answer. Adjudication directed; motions denied.

See, also, 274 Fed. 1008.

James F. Curtis and Root, Clark, Buckner & Howland, all of New York City, for petitioning creditors.

William Mann, of New York City, for alleged bankrupt.

Peale & McLaughlin and John C. Myers, all of New York City, for objectors.

Thomas K. Schmuck and Hulon Capshaw, both of New York City, for Delaware Steamship & Commerce Corporation.

LEARNED HAND, District Judge. This case now comes up upon motion for an adjudication on further stipulated facts, on motion by the petitioning creditors to strike out the answers of McNeil & Co. and of the "Protective Committee" of shippers, and on motion of the Delaware Steamship & Commerce Corporation to be allowed to intervene and to file an answer.

[1] As to the adjudication, I may say at the outset that the answers already in do not put in issue any material allegation of the petition. They allege that the Exchange cannot be adjudicated, which is matter of law, and that it is not insolvent, which is irrelevant. There is no material traverse at all, and the adjudication might go forthwith. The petitioners have, however, for reasons which I do not quite understand, disregarded these omissions, and both sides have prepared a new stipulation touching the act of bankruptcy, i. e., the resolution of May 11, 1921. Even this is incomplete because it is only from the affidavits of Mr. McLaughlin of July 20, 1921, and Mr. Snider, of July 15, 1921, that I can glean the whole situation which the parties mean to discuss.

I might, and perhaps I ought to, decline to consider any issues not embodied in a pleading but picked up from a mass of desultory papers in such way as best I may. Nevertheless, I prefer to try to dispose of what the parties apparently think they have presented, rather than to throw them back upon the letter of what they have done. However, I have not considered the question whether the petitioners are creditors of the Exchange. That allegation of the petition is not only not at issue, but it is not mentioned in the briefs, nor was it argued at the bar. Therefore I consider only the question whether there was an act of bankruptcy. In that consideration I disregard in toto the answer of the Exchange as a pleading, though not, as will transpire, as an act in pais. It is nothing that I can discover but a well-intentioned statement of evidence concluding with an expression of doubt. In contentious matters a court is entitled to be left less in the position of advisor and more in that of judge.

[2] In the stipulation now submitted I find no statement of the composition of the executive committee of the Exchange on May 11, 1921, when the resolution was passed at a special meeting. On its face the resolution was an authoritative action of that body, to which the closest analogy is a board of directors of a corporation, and such a board has the power to make such a declaration, in states where it may make an assignment for the benefit of creditors. Re Moench & Sons Co., 130 Fed. 685, 687, 66 C. C. A. 37 (C. C. A. 2d). The powers of the executive committee of the alleged bankrupt are defined by rules 4 and 7 of the "Revised Rules." They give that committee "supervision" over the Exchange and the right to amend the rules. There is to be but one meeting of the members every year, and no provision is made for calling special meetings, as is done in the case of the executive committee (Rule 6). It appears to me that between the annual meetings of members, the executive committee, which was the only body in existence capable of acting at all, had complete authority to do everything which a normal board of directors could do. I must pro-

ceed by analogy, doubtless, but the analogies all make for the powers exercised in this instance.

[3, 4] Next arises the question whether the power was in fact exercised. The affidavits show that of the eleven members of the executive committee provided for in the rules, only nine were ever elected, and, of these nine, one had resigned before the day in question, though his resignation was not accepted. It makes no difference as I view it whether there were eight or nine members. On May 11, 1921, the date of the resolution, there were present at the meeting three members of the committee and two other persons holding proxies to act for two other members. All these five united in the vote and no more. The first question is whether this was a legal vote of the executive committee. I am satisfied that it was not, in spite of the fact that the business of the committee had customarily been conducted in that manner. Again, having recourse to the analogy of a board of directors, such discretionary powers could not be lawfully delegated. Craig Med. Co. v. Merchants' Bank, 59 Hun, 561, 14 N. Y. Supp. 16; Perry v. Tuskaloosa, etc., Co., 93 Ala. 364, 9 South. 217; Atty. Gen. v. Scott, 1 Ves. 413, 417.

[5] Nevertheless, the act was in fact done on behalf of the company and in its name, and, though unauthorized, it might be ratified by acquiescence after knowledge brought home to the other members of the committee. Here again I revert to the analogy of a corporation. Rolling Mill v. St. Louis, etc., R. R., 120 U. S. 256, 7 Sup. Ct. 542, 30 L. Ed. 639; Pittsburgh, C. & St. L. R. Co. v. Keokuk & H. Bridge Co., 131 U. S. 371, 381, 9 Sup. Ct. 770, 33 L. Ed. 157. If, then, the other members had knowledge of this resolution and after a reasonable time for action remained acquiescent, or expressed their concurrence, they must be deemed in effect to have ratified it, and it would be valid ab initio according to the common maxim of the civil law.

[6] The resolution was passed on May 11, 1921, and the Exchange appeared before May 24th, through its attorney, whose authority to appear and act must be taken as authorized without further proof than the appearance itself. Osborn v. U. S. Bank, 9 Wheat. 738, 829, 830, 6 L. Ed. 204; Ritchie v. McMullen, 159 U. S. 235, 241, 16 Sup. Ct. 171, 40 L. Ed. 133. On June 7, 1921, after several extensions, he filed an answer which not only did not repudiate the resolution, but spoke of it as passed by the executive committee. The question is whether this answer after an interval of four weeks, together with the reasonable inferences to be drawn from the situation as a whole, make prima facie proof of acquiescence, or indeed of positive assent.

I think that the evidence is enough. That the two members who sent proxies at once learned of what had been done in their name appears to me nearly a certainty, at least so probable as to justify a finding to that effect, in the absence of contradiction. Had they protested, I think that the attorney duly authorized to file an answer would not have unconditionally alleged in the answer that the executive committee had passed the resolution. To suppose the contrary is

to suppose that though he knew that only three of the committee had acted, and that others whose names were used were in protest against it, he nevertheless disregarded their dissent, and alleged what he knew to be untrue or at least doubtful. But if they did not protest at what was done, it seems to me that a period of four weeks was a reasonable time within which to make their protest, and the basis of a fair inference that they in fact assented to the use of their names by their proxies.

The three members who were not present are not so surely fixed with notice as the two who sent proxies. Still, a thing so notorious as the filing of a petition in bankruptcy would not be likely to be kept from the executive members of the society. It is only a shade less probable that they knew of what took place, both the petition and the resolution, than the two members who sent proxies. Finally, I cannot suppose that the answer prepared at the end of the period was not brought to the attention of the only persons who could authorize it. Perhaps indeed the presumed authority of the attorney is alone enough to go so far.

As matter of evidence in this record I therefore conclude that the members not present, and certainly the two who sent proxies, learned of the resolution, and of the answer to be filed, and assented to both. I further conclude that this assent was a ratification by them—and particularly by the two who must have got an immediate report from their proxies—of both resolution and answer. In this view it is strictly speaking unnecessary to consider any subsequent action or inaction of the members of the committee. However, I note in corroboration of my conclusion that although the case has been in court for about six weeks after the answer was filed, and although the attorney, Mr. Mann, has been in attendance at all hearings, his client has not suggested any repudiation of the resolution nor has any individual member of the committee made any protest.

In Re Bates Machine Co. (C. C.) 91 Fed. 625, Judge Lowell had before him a closely analogous case involving indeed express ratification. He held that the ratification would not relate back because of the rights of intervening creditors who had filed objection, as have the respondents here. It is not clear whether in Re Bates Machine Co., supra, the intervening creditors had filed their objection before the stockholders' vote of ratification. Apparently they did, and I interpret the decision as holding that their intervention and objection before the vote of ratification gave them rights which could not be changed. In the case at bar no creditors intervened until June 7, 1921, the day when the Exchange's answer was filed. At least there is no evidence of any action before that time. As I have held that there is enough evidence to justify the conclusion that the resolution was ratified on or before June 7, In re Bates Machine Co., supra, does not apply. Yet with the greatest deference it appears to me that the mere filing of an answer might not have vested the interveners with any new rights which a

subsequent ratification could not affect. I see no change in the interveners' position through such action. Their rights remained what they had been; they had merely come forward to assert them. The retroactive effect of a ratification always changes existing rights in some respects, else it would be irrelevant. Farmers' Loan, etc., Co. v. Memphis, etc., Co. (C. C.) 83 Fed. 870; Cook v. Tullis, 18 Wall. 332, 21 L. Ed. 933. The exception to the general rule is not very clear, as is shown in Mr. Justice Lurton's discussion in Farmers' Loan & Trust Co. v. Memphis, etc., R. R., supra, and so far as I know it has in application been confined to cases where there has been some intervening attachment, execution, or similar lien, or to cases like Strain v. Gourdin, 23 Fed. Cas. No. 13,521, where the principal seeks to be relieved from notice which he had when he ratified but did not have when the unauthorized act was done.

Therefore I should wish to consider carefully whether the mere interposition of an answer was the vesting of an intervening right, if I thought that there was no adequate evidence of ratification on or before June 7, 1921. Judge Hazel, in Re Lisk Mfg. Co. (D. C.) 167 Fed. 411, gave as one reason for accepting a resolution similar to that at bar the later acquiescence of the directors. His language is indeed obiter, but for all that not to be disregarded.

[7] I conclude, therefore, that the ratification speaks as of May 11, 1921, and that an adjudication may pass. The motion to strike out the answer of McNeil and the "Protective Committee" I shall deny, but without passing upon the merits. It is enough that I have concluded to adjudge the Exchange a bankrupt regardless of those answers. Any decision on the motion would of necessity be obiter. The motion for leave to intervene made by the Delaware Company I deny, but as matter of discretion. I should deny it merely as irrelevant except that on an appeal if the Circuit Court of Appeals took a different view of the law, it would be necessary for the District Court to exercise its discretion in the first place before any consideration of those answers could be had. I use my discretion against the applicants because they allowed a default of nearly two months to run against them without any excuse whatever. I must conclude from their affidavit that they knew of the proceedings all the time and chose to take no action. It is certainly not necessary to do more than allude to the excuse of other pressing business, unless all judicial proceedings are to be delayed at the convenience of the parties or their attorneys. Moreover, there seems good reason not to open a default in this case. If the tangled affairs of this society can be unraveled in bankruptcy and any preferences set aside, it is surely in the interests of justice that it should be done. Of course, I make no suggestion now as to the legal relations arising from what was done before the bankruptcy proceedings. All that I decide is that being within the jurisdiction of this court the Exchange committed an act of bankruptcy and can bring its affairs here to be settled. Whether the petitioners are creditors of the Exchange or creditors only of certain of its members, I do not say. Whether the assignment of credits

from one to another in contemplation of insolvency is within section 68 I do not say. All these things will necessarily arise at some future stage of the proceedings, certainly if suits are brought to set aside the assignments; they do not arise now.

Adjudication directed; both motions denied.