GEORGE P. YAEGER AND ANOTHER v. ED GIGUERRE
AND OTHERS.[1]

May 17, 1946.

No. 34,195.

*A. M. Joyce,* for appellants.
*John W. McConneloug,* for respondent Ed Giguerre.
*Walter T. Ryan,* for all other respondents.

[1]Reported in 23 N. W. (2d) 22.

MATSON, JUSTICE.

Appeal from a judgment denying injunctive relief.

Plaintiffs, as taxpayers, sued to enjoin the city of South St. Paul; its treasurer, Joseph Jerhoff; Truman Alcorn, Thomas Peck, and Leonard Anderson, as members of its fire and police commission; and Charles Regan, Mike O'Toole, and Roy Francis, as members of its civil service commission, from paying out any further money as compensation for the services of the defendant Ed Giguerre, who is alleged to have been, and to be, employed as a police officer in violation of statutes pertaining to civil service, and in violation of the civil service rules of the city of South St. Paul. A demand for a personal judgment for the recovery of any moneys unlawfully disbursed theretofore was waived by stipulation.

Pursuant to Minn. St. 1941, §§ 419.01 to 419.18 (Mason St. 1940 Supp. §§ 1933-48 to 1933-63d), the city council of South St. Paul, by resolution dated June 1, 1936, duly established a municipal civil service commission. Under § 419.05 (§ 1933-52), this commission at once became vested with "absolute control and supervision over the employment, promotion, discharge, and suspension of all officers and employees of the police department." Section 419.15 (§ 1933-63a) specifically provides that "any police officer regularly employed at the time of the creation of the civil service commission shall automatically come under" its jurisdiction.

Defendant Giguerre, who first became a member of the South St. Paul police force in 1929 and who was still a member thereof on June 1, 1936, was automatically blanketed in and made subject to civil service. On May 8, 1943, he applied to the chief of police for a 30-day leave of absence beginning May 18. He was referred by the chief of police to Charles Regan, secretary of the civil service commission, and the latter referred him back to the chief of police, who then granted the leave. Upon Giguerre's request for an extension of the leave period to a full year, the chief of police extended the leave to a total of 90 days dating from May 18, 1943, and gave notice thereof to the civil service commission. The extended 90-day leave was approved by the board of police and fire commissioners.

No action was taken by the civil service commission until August 16, 1943, when at a special meeting thereof a resolution was adopted confirming and approving the action of the police chief in granting 90 days' leave to Giguerre, which was to date, however, from May 22, 1943, and specifying that Giguerre "must report for duty not later than 12 midnight of August 21, 1943, to maintain his rights on the civil service list." He reported back for work on August 20, 1943, but was not given any work until August 23, when he worked eight hours. Commencing with September 3, 1943, he was given steady work and has been so employed ever since.

■ Plaintiffs' action in part rests on their contention that Giguerre's employment is illegal in that the civil service commission, since its establishment, has (1) failed to classify all police department employes; (2) failed to prepare and maintain a service register; (3) failed to prepare and maintain an application register; and (4) has otherwise neglected to comply with civil service rules. In considering this contention, we are at once confronted with the undeniable fact that, under the findings of the trial court, which are reasonably sustained by the evidence, Giguerre had automatically acquired a civil service status in 1936. In the absence of evidence of any overt act or omission in violation of civil service rules in the performance of his duties as a subordinate police officer, it must be presumed that Giguerre's initial civil service status has continued unchanged. His acquirement of a civil service status did not render him responsible for the administrative derelictions of his new superior, the civil service commission. Obviously, the commission was established to supervise the employes. See, § 419.05 (§ 1933-52). The civil service act and rules made thereunder are to be given a common-sense construction. See, Younie v. Doyle, 306 Mass. 567, 29 N. E. (2d) 137, 131 A. L. R. 379. The purpose of the act was to permit municipalities to remove their police department employes from the debilitating influence of politics. Naeseth v. Village of Hibbing, 185 Minn. 526, 242 N. W. 6; Saholt v. City of Rochester, 185 Minn. 510, 242 N. W. 4. It was not intended to enmesh and entrap faithful employes with a set of rules

44

and regulations the general administration of which is entirely out of their control.

■ Whatever the administrative sins of the civil service commission may have been (and if plaintiffs' allegations are substantially true they have been numerous), we are here concerned solely with the question whether the defendant Giguerre at any time failed to perform his duties as an employe so as to forfeit his civil service status. Specifically, did he take the necessary steps to obtain a valid leave of absence? It was his duty to do so. Civil service rule 27(c), (see, also, rules and regulations of the police department, § 4, par. 5) provides that a leave of absence may be obtained "upon written request approved by the Chief of Police and the Commission." Although Giguerre before leaving his post of duty did obtain the approval of the chief of police, he neglected and failed to secure the approval of the commission. The approval given by the board of police and fire commissioners was a nullity. Was, however, the belated action of the civil service commission on August 16, 1943, in approving the 90-day leave of absence, retroactive in its application so as to validate the leave? Under civil service rule 27(c), the chief of police is in effect the agent of the commission in dealing with subordinate employes for the granting of leaves of absence. There can be no question that the commission had the authority in the first instance to approve the leave as granted by the chief of police. It is a general rule that whatever acts public officials may do or authorize to be done in the first instance may subsequently be adopted or ratified by them with the same effect as though properly done under previous authority. State of Wisconsin v. Torinus, 26 Minn. 1, 49 N. W. 259, 37 Am. R. 395; Gage County v. Wright, 86 Neb. 436, 125 N. W. 625; Mizen v. Adams County, 96 Neb. 304, 147 N. W. 699; 43 Am. Jur., Public Officers, § 257. See, Kettle River Quarries Co. v. City of East Grand Forks, 96 Minn. 290, 293, 104 N. W. 1077, 1078; Farmers' L. & T. Co. v. Memphis & C. R. Co. (C. C.) 83 F. 870, 874; Whiteside v. United States, 93 U. S. 247, 253, 23 L. ed. 882, 883; 4 L.R.A.(N.S.) note, p. 432; 1 Dunnell, Dig. & Supp. § 176. Applying

this rule to the instant case, it is clear that the civil service commission by its belated action ratified the granting of a leave of absence with the same effect as if originally authorized.

A valid leave of absence was obtained by Giguerre. The findings of the trial court that he returned to work prior to the expiration of his leave are also reasonably sustained by the evidence.

Affirmed.