STATE EX REL. FRANK ARCHAMBO v. ROSS L.
THORFINNSON AND OTHERS.[1]

November 20, 1953.

No. 36,093.

*William H. DeParcq* and *Donald T. Barbeau,* for appellant.
*Frank N. Whitney,* City Attorney, for respondents.
*Joseph C. Vesely,* Councilman, *pro se.*
*W. Harlan Perbix,* Mayor, *pro se.*

KNUTSON, JUSTICE.

Appeal from an order of the district court of Hennepin county quashing a writ of certiorari to the members of the civil service commission, the mayor, the members of the city council, the superintendent of police, and the city manager of the city of Hopkins.

The pertinent facts are as follows: Frank Archambo was employed by the city of Hopkins in July 1949 to do police work on a part-time basis. At the time of such employment he had no civil

[1] Reported in 61 N. W. (2d) 231.

service status. In March 1950, the city manager requested that the civil service commission certify a new list of eligibles for employment as patrolmen, since the previous list was exhausted. To obtain such list, the commission published notice of an examination to be held on May 15, 1950. With respect to the type of examination to be given the notice read as follows:

"The Hopkins Civil Service Commission will hold an examination for police officers at the City Hall in Hopkins, Minn., on Monday, May 15, 1950, at seven p. m."

As of that date minutes of the Hopkins city council referred to the classification of personnel within the police department as "Police, Senior Officer," "Junior Officer," "Patrolmen," and "Extra." The last would receive an hourly wage, the others monthly salaries. The announced examination was given pursuant to a written request to the commission from the city manager, which read in part:

"It is possible that one man may be employed as a patrolman, but it is desirable to have other qualified men available for extra, substitute and prospective patrolmen."

No application register was kept, and no notice of the examination was posted.

On May 18, 1950, the civil service commission notified the city manager by letter that an examination had been given and then stated:

"We submit the following three names for patrolmen from the register:

| "Name | Rank |
|---|---|
| "Louis G. Faucher | 1 |
| "Clyde L. Johnson | 2 |
| "Emil J. Shenkyr | 3 |

"We, also, submit the following name for Detective Investigator, Frank A. Archambo, who ranks one on special officers' register."

The first three names on the list certified as patrolmen were all veterans and Archambo was not. At that time Archambo was not

an investigator; there was no official position of detective investigator as far as appears from the records of the city council. The notice given did not disclose that any examination was to be held for the position of detective investigator, and, as far as appears from the record, no examination was given for such position. Apparently no records were kept by the civil service commission; at least, the record here fails to disclose any that are of any value.

In November and December 1951 the personnel of the civil service commission was completely changed. On December 22, 1951, the commission adopted a comprehensive set of rules, one of which provided that an eligible register of police personnel was to be in effect for a period of two years, except in certain cases of emergency when it could be extended. Because of the limited records available from the preceding commission, the chief of police was asked to submit the names of those who he believed were covered by civil service. He did so, including the name of Archambo, whom he listed as qualified for general duty. Based on this information, the commission prepared a service register which included the name of Archambo. It appears therefrom that he was eligible for employment as patrolman, paid on an hourly basis. The record fails to show that he was ever certified for duty as a patrolman prior to that time. The commission later adopted a resolution changing the classification of Archambo from patrolman to detective investigator. This resolution read:

"Whereas, prior to about December 1, 1951, the Hopkins Police Civil Service Commission failed to keep an adequate service register, application register and eligible register and kept no records of their proceedings, if any, and

"Whereas, because of the lack of such records and information it was necessary for the present commission to compile a service register from information obtained from Superintendent of Police Engner Johnson, and City Clerk and Acting City Manager A. W. Elmquist, and

"Whereas, on the basis of said information the Hopkins Police Civil Service Commission prepared a service register which incorrectly classified Frank Archambo as a patrolman, and

"Whereas, it appears from information now before the Commission that Frank Archambo never qualified for employment as a patrolman in accordance with Civil Service rules, and that he was certified on the eligible register as a detective investigator;

"Be It Resolved, that the service register which was adopted December 20, 1951, be corrected in part by changing the classification of Frank Archambo from that of Patrolman to Detective Investigator * * * "

Early in July 1952 the commission gave notice that an examination would be held for patrolman. The notice was duly published and posted. Archambo was given notice by a personal letter in which he was informed that the existing eligible register had expired on or about May 18, 1952, and that examinations for police patrolmen would be held on July 31, 1952. Archambo refused to take the examination, although others on the old register did. As a result, he was not placed on the new eligible register established on August 5, 1952. On September 2, 1952, the city council adopted a resolution stating that the police department should continue to consist of a superintendent and four full-time patrolmen. On September 5, 1952, the commission adopted a resolution which in part stated:

"Since the Resolution No. 311 attached to the City Manager's letter transmitting copies of said resolution provides for only four full time patrolmen and certain part time police patrolmen as the need may require, and since the Commission's record indicates that Frank Archambo, who commenced work as a detective investigator on a part-time basis in July, 1949, has never been certified for employment on an eligible register either as a full time or part-time patrolman but rather as a detective investigator, therefore he is to be laid off."

On September 10, 1952, the city manager notified the superintendent of police that, because of the resolution of the city council adopted on September 2, the employment of Archambo should be terminated for the reason that the position of detective investigator had been abolished. Pursuant to such notice, Archambo was given notice of termination of his employment by the superintendent of police on September 12, 1952. It is admitted that no written charges were made against him, nor was any hearing held preceding his discharge.

The only question raised by this appeal is whether Archambo had ever acquired such civil service status that he could not be summarily discharged without a hearing.

▇▇▇ M. S. A. c. 419 contains the applicable statutory provisions relating to the establishment and operation of a police civil service commission. Section 419.06 provides in part:

"The commission shall, immediately after its appointment and from time to time thereafter, make, amend, alter, and change rules to promote efficiency in the police department service and to carry out the purposes of this chapter. The rules shall provide among other things for:

"(1) The classification of all offices and employments in the police department;

"(2) Public competitive examinations to test the relative fitness of applicants;

"(3) Public advertisements of all examinations at least ten days in advance in a newspaper of general circulation in the city or village and posting the advertisement for ten days in the village or city hall and at each station house;

"(4) The creation and maintenance of lists of eligible candidates after successful examination in order of their standing in the examination and without reference to the time of examination, which shall be embraced in an eligible register;

"(5) The commission may by rule provide for striking any name from the eligible register after it has been two years thereon;

"(6) * * *

"(7) The certification of the name standing highest on the appropriate list to fill any vacancy;

"(8) * * *

"(9) Promotion based on competitive examination and upon records of efficiency, character, conduct, and seniority."

In State ex rel. Kos v. Adamson, 226 Minn. 177, 32 N. W. (2d) 281, we held that strict compliance with the terms of the statute was mandatory and that substantial compliance was not enough. Here, as far as it appears from the record, there was little, if any, attempt to comply with the statute prior to the reorganization of the commission during November 1951. Among other things, the commission did not adopt any rules; it posted none, as was required by statute, since none were adopted; it did not keep an application register as required by § 419.05; and it failed to keep a proper service register. With respect to the examination under which Archambo claims that he acquired a civil service status, the commission did not give any notice of an examination for the position of detective investigator for which he was certified, and it did not post a notice of the examination which was to be given as is required by law.

Archambo was never certified for the position of patrolman, unless it can be said that he was so certified when the new commission made a register based upon information obtained from the superintendent of police. The difficulty with this theory is that he was never certified for that position after he took the original examination. Either he took an examination not covered by the notice published for an office that was not within the classified positions as shown by the records of the city council or he was certified for a position for which no examination was given. In either event, there would be a fatal departure from the requirements of the civil service act. It is evident that there has been such a complete failure to abide by the requirements of the law that appellant could not have acquired the civil service status which he now claims he is entitled to retain.

Appellant further contends that he should not be penalized because respondents have lost records or have kept inadequate ones. There is no showing that the records were kept and have been lost. The failure of a commission to comply with the mandatory statutory provisions requiring the keeping of a proper register will prevent an employee's acquiring a civil service status. Were it otherwise, a civil service commission, by the simple ruse of failing to keep the required records, could completely prevent the realization of the purpose underlying all civil service; namely, the preclusion of favoritism and the appointment of public employees on the basis of merit.

Appellant also contends that he acquired civil service status when he was placed on the civil service register by the new commission which register was based on information furnished the commission by the superintendent of police. There is no merit to this contention for at least two reasons. In the first place, he could not acquire a status he did not have simply by the superintendent's including his name on the list of those eligible by mistake. In the second place, the error was corrected when the commission discovered that he had never been certified as a patrolman and he was then placed on a register as a detective investigator, a position which did not then exist under the classified services of the city.

Appellant relies upon Yaeger v. Giguerre, 222 Minn. 41, 23 N. W. (2d) 22. That case is not in point. There the defendant was a member of the police force for many years prior to the establishment of a civil service commission by the city of South St. Paul. Upon establishment of the civil service commission, he was automatically blanketed in by the law. He had a civil service status from the inception of the commission. We held that failure on the part of the commission to comply with the law would not deprive him of such status. We there said (222 Minn. 43, 23 N. W. [2d] 24):

"* * * Giguerre had automatically acquired a civil service status in 1936. In the absence of evidence of any overt act or omission in violation of civil service rules in the performance of his duties as a subordinate police officer, it must be presumed that Giguerre's

initial civil service status has continued unchanged. His acquirement of a civil service status did not render him responsible for the administrative derelictions of his new superior, the civil service commission."

In this case appellant never did acquire a civil service status. The two cases are clearly distinguishable. If, as appellant contends, an employee could acquire a civil service status under the facts in this case, civil service would be meaningless. Not only could our veterans' preference laws be circumvented, but the applicant lowest in an examination could be given preference by the simple expedient of placing him in a nonexistent classification for which no examination had been given. Obviously, the civil service statutes may not be so manipulated. As was said in State ex rel. Kos v. Adamson, 226 Minn. 177, 183, 32 N. W. (2d) 281, 284:

"* * * The law provides for a complete system of procedure designed to secure appointment to public positions of those whose merit and fitness have been determined by examination, and to eliminate as far as practicable the element of partisanship and personal favoritism in making appointments."

The trial court correctly determined that appellant had acquired no civil service status. Therefore, he could be discharged without a hearing.

In view of our decision on this issue, we need not determine other questions raised by appellant.

Affirmed.