Barbara ANDERSON, et al., Appellants,

v.

The CITY OF MINNEAPOLIS, et al., Respondents.

No. C6–84–1842.

Court of Appeals of Minnesota.

March 12, 1985.

Roger A. Peterson, Richard L. Kaspari, Peterson, Engberg & Peterson, Minneapolis, for appellants.

Jerome R. Jallo, Asst. City Atty., Minneapolis, for respondents.

Heard, considered and decided by LANSING, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Plaintiffs appeal from a judgment in favor of the Minneapolis Civil Service Commission. The trial court determined that the Commission did not act outside its authority when in 1984 it adopted and implemented a plan to randomly reject a number of applicants for several civil service positions prior to administering a competitive examination for those positions. We affirm.

## FACTS

In the fall of 1983 the Minneapolis Civil Service Commission began to develop plans and procedures for recruiting and examining persons to fill approximately 20 openings for the position of firefighter. When it became apparent that there would probably be thousands of applicants for those 20 openings, the Commission adopted the following Resolution:

> If the Civil Service Commission determines that the number of applicants for this position is too large to feasibly test, a procedure may be used to randomly reduce the number of applicants to be tested.

A procedure for random reduction of firefighter applicants was subsequently adopted by the Commission. The plan stated that it would not be feasible to test the number of expected applicants for the positions, and set forth procedures whereby 800 applicants could be randomly selected. In its official job announcement the Commission notified all applicants that the random reduction procedure might be used.

The Commission received 2,770 applications for the 20 firefighter positions, 353 of which were rejected as invalid on technical grounds. Pursuant to the random reduction plan, the remaining 2,417 applicants' names were placed in barrels and 800 names were drawn. The remainder of the applicants were notified that they would not be eligible to take the competitive examination. Out of the 800 applicants randomly selected, a sufficient number passed with scores high enough to satisfy the hiring needs of the Fire Department for the two-year life of the current eligible list.

The appellants are persons who were not allowed to take the competitive examina-

tion. They brought this lawsuit for declaratory, injunctive and monetary relief which they claimed was necessitated by the Commission's allegedly illegal random reduction procedures. Their complaint alleged that the Commission's actions violated the Minneapolis City Charter and the Rules and Resolutions of the Minneapolis Civil Service Commission. They have not alleged any constitutionally prohibited conduct on the part of the Commission.

The district court found that the random reduction plan and procedures were fair and reasonable in light of the Commission's limited funds, staff and number of openings. The court concluded: 1) the Minneapolis City Charter does not require testing of all qualified applicants; 2) the Commission has a duty to examine a sufficient number of candidates so that the examination will be competitive and will meet the City's employment needs for the foreseeable future; 3) the Commission must use a reasonable and unbiased method to reduce the number of applicants; 4) the Commission's use of a random reduction method in this case was reasonable and free from bias; 5) the examination in this case was competitive and has produced a sufficient number of candidates to meet the City's needs for the next two years. The appellants have challenged the above conclusions.

## ISSUE

Was the Minneapolis Civil Service Commission required in this instance to offer a competitive examination to every person who applied for the firefighter position and who met the minimum qualifications for that position?

## ANALYSIS

■ The City of Minneapolis is governed by a Home Rule Charter which includes the following provision regarding civil service examinations:

Section 7. * * * The commission shall, from time to time, make, amend, alter and change rules, to promote efficiency in the City service and to carry out the purposes of this Chapter. The rules shall provide, among other things, for:

\*   \*   \*   \*   \*   \*

b. Public competitive examinations to test the relative fitness of applicants.

\*   \*   \*   \*   \*   \*

e. The rejection of candidates or eligibles who, after the entry of their names, shall fail to comply with the reasonable rules and requirements of the commission in respect to age, residence, physical condition or otherwise, or who have been guilty of criminal, infamous or disgraceful conduct, or of any wilful misrepresentation, deception or fraud in connection with the examination or in connection with their applications.

\*   \*   \*   \*   \*   \*

k. Appointment of unskilled laborers in a fair and equitable manner, without competitive examination, except such tests of physical fitness or other qualifying tests as the commission may prescribe.

The appellants argue that this language requires the Commission to allow every applicant for a skilled position [1] to take a competitive examination. The district court in its memorandum, however, determined otherwise:

There is no specific requirement in the Rules and Charter Provisions of the Minneapolis Civil Service Commission that all candidates who meet the minimum qualifications for a skilled position be permitted to take a competitive examination.

We agree. There is no language in the Charter which expressly requires that all applicants for a position be allowed to take a competitive examination, although the Charter does require that a competitive examination be offered when a firefighter position is open.

The trial court's approval of the Commission's random reduction procedure does not

---

1. In its findings and conclusions the District Court assumed that the position of firefighter is a skilled position. This conclusion is supported by the record.

thwart the purposes behind the civil service laws. The purpose of a civil service examination was explained in *Anderson v. City of St. Paul*, 308 Minn. 121, 241 N.W.2d 86 (1976):

"* * * The civil service system rests on the principle of application of the merit system instead of the spoils system in the matter of appointment and tenure of office. Civil service laws are not penal in nature, but are designed to eradicate the system of making appointments primarily from political considerations with its attendant evils, to eliminate as far as practicable the element of partisanship and personal favoritism in making appointments, to establish a merit system of fitness and efficiency as the basis of appointments, and to prevent discrimination in appointments to public service based on any consideration other than fitness to perform its duties."

*Id.* at 124, 241 N.W.2d at 88, *quoting from* 15 Am.Jur.2d, Civil Service, § 1. The *Anderson* court noted that civil service regulations "are to be given a commonsense construction," *id.* at 125–126, 241 N.W.2d at 89, *citing Yaeger v. Giguerre*, 222 Minn. 41, 23 N.W.2d 22 (1946), and indicated that the spirit, rather than the letter of the rules should be followed. *Anderson*, 308 Minn. at 125, 241 N.W.2d at 89.

In the present instance there is no allegation that the random reduction procedures fostered partisanship or personal favoritism, or resulted in discrimination against those whose names were not chosen for the competitive examination. Indeed, it could not be seriously alleged that the policies behind the civil service examination were at all violated in this instance. Rather, as the trial court found, the random reduction procedure was established solely to promote efficiency and to reduce cost and staff time. This is consistent with the policies cited in *Anderson*.

The appellant cites *Essling v. St. Louis County Civil Service Commission*, 283 Minn. 425, 168 N.W.2d 663 (1969) which states:

[A] civil service commission exercises purely statutory power and must find within the statutes the authority to exercise the power it claims. * * * A commission can exercise only such authority as is legally conferred by express provisions of law or such as, by fair implication and intendment, is incident to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the objectives for which the commission was created. Any reasonable doubt as to the existence of any particular power in the commission should be resolved against the exercise of such authority.

*Id.* at 428, 168 N.W.2d at 665 (citations omitted). This same idea was expressed in *State v. Hodapp*, 234 Minn. 365, 373, 48 N.W.2d 519, 524 (1951). The appellant thus argues that because random selection is not expressly allowed by the Minneapolis City Charter, the procedures used in this instance were outside the scope of the Commission's authority. However, the *Essling* and *Hodapp* cases involved civil service commissions set up pursuant to statutory authority (*see* Minn.Stat. §§ 43.01 *et seq.*). A decision construing civil service rules established pursuant to the Minneapolis Home Rule Charter states:

The city of Minneapolis is governed by a Home Rule Charter under which it is authorized to establish a civil service system for the city. The Minnesota Supreme Court in *State ex rel. Coduti v. Hauser*, 219 Minn. 297, 17 N.W.2d 504, 507, holds:

"'The rules of the Commission, having all the force and effect of statutory law, should be sustained unless they violate constitutional guaranties, controlling state legislation or the provisions of the [Minneapolis home-rule] charter pursuant to which they were adopted.'"

*Carter v. Gallagher*, 452 F.2d 315, 323 (8th Cir.1971), *cert. denied*, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972). The *Gallagher* language is particularly relevant in the present instance since the *Gallagher* case is procedurally tied to the

present lawsuit. In *Gallagher* the plaintiffs were minority persons who had allegedly been discriminated against by the Minneapolis Fire Department and the Minneapolis Civil Service Commission. The *Gallagher* court found the hiring practices racially discriminatory and required that the city remedy the problem. The court retained jurisdiction over the hiring of Minneapolis firefighters, and in 1984 specifically approved of the Minneapolis Civil Service Commission's "current examination plan for the recruitment, taking of applications and hiring applicants for Firefighter positions *including those portions of the plan relating to random reduction * *."* *Carter v. Gallagher*, No. 4–70 Civ. 399 (D.Minn. Apr. 24, 1984) (Second Supplemental Order) (emphasis supplied).

As noted above, the appellants have not alleged any violation of their constitutional rights, nor would such allegation be valid. It has been recently determined that the procedures and standards for civil service employment do not create the type of property interest which is protected under the Fourteenth Amendment. *LaGrange v. City of Minneapolis*, 645 F.2d 615 (8th Cir.1981); *Vruno v. Schwarzwalder*, 600 F.2d 124 (8th Cir.1979).

The burden of proof at the trial level lay with the appellants, who were required to demonstrate that the Commission's actions were "fraudulent, arbitrary or unreasonable, or not within its jurisdiction and powers". *Coudron v. Johnson*, 288 N.W.2d 689, 691 (Minn.1979). We find that the actions of the Commission were not outside its jurisdiction and powers. In addition, the random reduction plan was not arbitrary or unreasonable. The district court specifically found:

> The Minneapolis Civil Service Commission anticipated that because of past interest by job seekers for the position of firefighter in Minneapolis, because of a down-turn in the economy, and because of extensive recruiting efforts, there would be as many as 3,000 or 4,000 applicants for the 20 openings. It also concluded that it had only sufficient staff time and funds to process and examine up to 800 applicants and that if it would process and offer examinations to that number it would have a list of enough well qualified candidates to supply all of the needs of the Minneapolis Fire Department for the next two years.

\*   \*   \*   \*   \*   \*

> The decision by the Minneapolis Civil Service Commission on May 31, 1984 to reduce the number of applicants for the position of firefighter to 800 by lottery was reasonable in light of the Commission's lack of funds, lack of staff, and limited number of openings for firefighter anticipated.

These findings are supported by testimony in the record. The Minneapolis Civil Service Personnel Director testified that the Commission did not have sufficient staff and resources to examine the 1617 persons whose names were not drawn. He testified further that examining those additional persons would take three or four months and cost approximately $100,000 in staff and supplies.

By our decision today upholding the Commission's actions we do not intend to effectuate a blanket authorization of any future random reduction procedures by a Civil Service Commission; rather, we simply uphold the district court's determination on the facts of this case. Because the Minneapolis City Charter does not indicate that every applicant for a skilled position must be tested, the Commission acted within its authority when it developed the specific random reduction plan for the 20 available firefighter positions. Further, in this instance both the decision to randomly reduce and the procedures developed were reasonable.

## DECISION

Affirmed.